MIGUEL MORALES MUÑOZ Y FLOR MARÍA CRUZ, demandantes y recurridos y recurrente el primero, *v.* JULIÁN CASTRO, RAMÓN CASTRO QUIÑONES, WESTERN ASSURANCE CO., ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandados y recurrente el último, y SUCESIÓN HÉCTOR A. PIÑERO y XAVIER ZEQUEIRA, demandados y recurrentes.

*Números:* 94, 95 y 96 *Resueltos:* 30 de abril de 1962

*Emilio de Aldrey,* abogado de la Sucesión Héctor A. Piñero y Xavier Zequeira, demandados y recurrentes, en el caso número 94; *Luis Blanco Lugo* y *Angel Cruz Cruz,* abogados de Miguel Morales Muñoz, demandante, recurrido y recurrente en el caso número 95; *Francisco Espinosa, Secretario de Justicia Interino, Arturo Estrella, Secretario Auxiliar, Jorge Ruiz Rivera, Procurador Auxiliar,* abogados del Estado Libre Asociado de Puerto Rico, demandado y recurrente en el caso número 96.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Trinal.

La sentencia recurrida responsabiliza al Estado Libre Asociado, a los contratistas Xavier Zequeira y Héctor A. Piñero, (¹) encargados de la construcción de una carretera, y a Ramón Castro Quiñones, conductor del automóvil en el cual viajaban los demandantes, de los daños que estos sufrieron como consecuencia de un accidente ocurrido en el kilómetro 15.5 de la carretera Estatal Núm. 3. Los contratistas estaban a cargo de la construcción de dos tramos contiguos de la mencionada carretera, y el accidente ocurrió precisamente donde terminaba el tramo a cargo de uno de ellos y comenzaba el tramo a cargo del otro.

El juez sentenciador determinó que en el sitio donde ocurrió el accidente no había ninguna persona de guardián para avisar del peligro, ni "había aviso alguno antes de llegar al desvío anunciando su proximidad . . ." "ni luz alguna que diera aviso del mismo . . ." "a pesar de que pocas noches antes había habido . . . un accidente de automóvil por falta

---

(¹) El demandado señor Piñero fue sustituído por los integrantes de su sucesión.

de luces que dieran aviso del peligro." Determinó asimismo que la noche estaba lluviosa, que había neblina en los alrededores del sitio donde ocurrió el accidente y que el automóvil donde viajaban los demandantes corría a una velocidad no menor de sesenta millas por hora.

El juez de instancia concluyó entonces que "la negligencia combinada del Estado y de dichos contratistas y del codemandado Castro Quiñones fue la causa próxima de los daños sufridos por los demandantes, porque existe la posibilidad razonable de que no ocurriera el accidente en una de las dos formas incompatibles con la negligencia combinada: (1) si en la obstrucción y el desvío hubiera habido suficientes luces para dar aviso del peligro, aunque el automóvil se condujera a una velocidad imprudente, y (2) si el automóvil se hubiera conducido a una velocidad prudente, aunque no hubiera luz en el sitio dando aviso del peligro".

Recurrieron ante nos en recursos separados que luego se consolidaron: el Estado, por entender que habiendo contratado la construcción de la carretera con contratistas privados, éstos eran los únicos responsables; los contratistas, por entender que, de acuerdo con lo determinado por el tribunal sentenciador, el único responsable era el conductor del automóvil donde viajaban los demandantes; y finalmente, el demandante Morales Muñoz, por no estar conforme con la cuantía de la indemnización que se le concedió. (²) No se impugna la forma cómo la corte a quo determinó había ocurrido el accidente.

I

Al establecer la responsabilidad del Estado, el juez de instancia concluyó como cuestión de derecho que "es responsable de los daños y perjuicios que se ocasionen por falta de protección suficientes para el viajero en las vías públicas.

---

(²) El conductor del automóvil en que viajaban los demandantes no recurrió contra la sentencia dictada. En el recurso instado por los contratistas se impugna la cuantía concedida a la demandante Flor María Cruz, cuestión que discutiremos al considerar la compensación concedida a Morales Muñoz.

3 L.P.R.A., sec. 422. La obstrucción y el desvío [donde ocurrió el accidente] eran inherentemente peligrosos. Por tanto, el Secretario de Obras Públicas no podía deshacerse de la responsabilidad del Estado delegándola en los contratistas Zequeira y Piñero".

La responsabilidad del Estado emana de lo dispuesto en el artículo 404 del Código Político, 3 L.P.R.A., sec. 422 que lee así:

"El Estado Libre Asociado de Puerto Rico será responsable civilmente de los daños y perjuicios que se ocasionen a las personas o propiedades por desperfectos, falta de reparación o de protección suficiente para el viajero en cualquier vía de comunicación perteneciente al Estado Libre Asociado y a cargo del Departamento de Obras Públicas, excepto donde se pruebe que los desperfectos de referencia fueron causados por la violencia de los elementos y que no hubo tiempo suficiente para remediarlos." ■

En *Rivera* v. *Pueblo*, 76 D.P.R. 404 (1954) al aplicar el citado precepto manifestamos que sus disposiciones no convertían al Estado en garantizador de la seguridad de las personas que utilizan las carreteras públicas, pero afirmamos que "[e]l Pueblo responde de los daños que se ocasionen a las personas o propiedades por desperfectos, falta de reparación o protección suficiente para el viajero en las vías públicas de comunicación excepto donde se pruebe que los desperfectos de referencia fueron causados por la violencia de los elementos y que no hubo tiempo suficiente para repararlos".

El Estado acepta la ley tal cual queda expuesta pero sostiene que por haber celebrado un contrato con los señores Piñero y Zequeira, no tiene responsabilidad por lo acaecido. Impugna la determinación del tribunal sentenciador al efecto de que la obra realizada era "inherentemente peligrosa". Doctrina invocada por la corte a quo para responsabilizar al Estado. ■

Ordinariamente la persona o entidad que contrata con otra persona para la construcción de una obra no es respon-

sable de los daños que cause el contratista a menos que, entre otras cosas, la obra sea "inherentemente peligrosa". *Blue Ridge Rural Electric Cooperative* v. *Bird*, 264 F.2d 689 (4to. Cir. 1959); *American Telephone and Telegraph Co.* v. *Leveque*, 173 N.E.2d 737 (Ill. 1961); *Reilly* v. *Highman*, 345 P.2d 652 (Kan. 1959); *Ducey* v. *Springfield Co-operative Bank*, 170 N.E.2d 356 (Mass. 1960); *Majestic Rlty. Associates, Inc.* v. *Toti Contracting Co.*, 153 A.2d 321 (N.J. 1959); *Janice* v. *State*, 107 N.Y.S.2d 674 (1951); *Restatement, Torts* § 416 (1934). Ahora, esta doctrina general no tiene aplicación cuando la entidad que contrata tiene la obligación, como la tiene el Estado en este caso, de velar para "que las carreteras estaduales a su cargo se mantengan en buen estado de conservación", artículo 403 Código Político, 3 L.P.R.A. sec. 421 y de responder de los daños que se ocasionen "por desperfectos, falta de reparación o protección suficiente". En estos casos la contratación de la obra para ser realizada por una tercera persona no lo releva de la responsabilidad que la ley le impone, y no entra en juego la cuestión de si la obra es "inherentemente peligrosa". Se trata de una obligación indelegable. En el *Restatement* sobre *Torts*, § 418 (1932) se expone la regla así:

"(1) Un municipio o compañía de servicio público que encomienda a un contratista independiente la construcción, mantenimiento o reparación de una carretera, la cual tiene la obligación bajo el derecho común o por ley de mantener bajo condiciones de razonable seguridad para uso del público, está sujeta a la misma responsabilidad por daños físicos a las personas que utilizan dicha carretera mientras la misma se encuentra abierta al tránsito, y que sean causados por la omisión negligente del contratista de hacer que dicha carretera sea razonablemente segura para el tránsito, al igual que si dicho municipio o compañía de servicio público hubiese retenido la construcción, mantenimiento o reparación de la carretera bajo su propio control." [3]

---

[3] La siguiente redacción sometida a la consideración de la American Law Institute en su reunión de mayo 17–20 de 1961, representa una exposición más adecuada de la ley.

Véanse: *Reel* v. *City of South Gate*, 340 P.2d 276 (Cal. 1959); *Schlenski* v. *City of St. Joseph*, 156 S.W. 823 (Mo. 1913); *Reardon* v. *Borough of Wanague*, 28 A.2d 54 (N.J. 1942); Anotaciones 25 A.L.R. 426; 52 A.L.R. 1012; 27 Am. Jur. *Negligence* sec. 50. ■

Es razonable que así sea. La seguridad de los que transitan por las vías públicas entraña una responsabilidad primaria. Si la ley le impone al Estado la obligación de velar por la seguridad de los viandantes, esta obligación debe subsistir en todo momento, y debe velar porque los contratistas adopten aquellas medidas de seguridad necesarias para evitar accidentes. Así, es innecesario determinar si se trata de un caso en que entre en juego la responsabilidad por obra "inherentemente peligrosa", pues la responsabilidad del Estado subsiste independientemente de esta circunstancia.

## II

Los contratistas en su recurso sostienen que la determinación del juez sentenciador al efecto de que el vehículo donde viajaban los demandantes era conducido a una velocidad en exceso de 60 millas por hora, establece como único responsable del accidente al conductor de dicho vehículo y que el hecho de que no hubiera luces ni avisos en el sitio donde ocurrió el accidente, no hace responsable a los contratistas. No tienen razón los recurrentes. El tribunal de instancia determinó que la concurrencia de ambas negligencias fue la causa próxima del accidente. Es correcta esa conclusión. El hecho de que el automóvil en que viajaban los demandantes fuera

---

"Una entidad que tiene la obligación de construir o mantener una carretera en condiciones razonables de seguridad para el uso del público, y que confía su construcción, reparación o conservación a un contratista independiente, está sujeta a la misma responsabilidad por daños físicos causados a quienes usan dicha carretera, tal como si hubiese conservado el control bajo su dirección, por la negligencia del contratista al no mantener condiciones razonablemente seguras para el tránsito cuando dicha carretera se mantiene abierta al público durante la realización de tales obras."

*Restatement, Torts*, sec. 418, y Comentarios (Tent. Draft Núm. 6, 1961).

conducido a 60 millas no justifica la conclusión de que su conductor fuera el único negligente y que esa fuera la causa próxima del accidente. El conductor del automóvil no obstante conducirlo a velocidad exagerada, pudo haber reducido la velocidad con suficiente antelación para evitar el accidente si los avisos hubieran estado a la distancia requerida por las Condiciones Generales de Contratación de Obras Públicas, vigente, o sea, a 150 metros que es algo más de 490 pies. 22 R.R.P.R., sec. 46–223. (⁴) La corte a quo hizo uso de los datos que aparecen en la tabla publicada en 9C Blashfield, *Cyclopedia of Automobile Law and Practice*, sec 6237, pág. 413 y su aplicación no ha sido impugnada para determinar que el automóvil donde viajaban los demandantes era conducido a 60 millas por hora. Esa misma tabla establece que un automóvil conducido a 70 millas por hora requiere una distancia de 295 pies para detenerse. (⁵) De acuerdo con la referida tabla, suponiendo que el automóvil envuelto en este accidente no tuviera los frenos en las condiciones óptimas de funcionamiento, hay un margen suficiente de seguridad entre la distancia a que debían estar los avisos y luces de más de 490 pies, y la distancia requerida para detener un automóvil conducido a una velocidad de 70 millas, 295 pies. Así, era razonable concluir, que de haber habido luces el conductor pudo haber detenido el automóvil y evitar el accidente. ▇

La causa próxima de un accidente puede deberse a la negligencia de una o más de las partes envueltas en el mismo. *Cruz et al.* v. *Frau*, 31 D.P.R. 92 (1922). Si más de una fue negligente y el accidente se debió a la concurrencia de ambas negligencias, las dos partes son responsables de los daños cau-

---

(⁴) Dispone la parte pertinente de estas Condiciones que: "las señales de advertencia serán colocadas a las afueras de la obra en construcción y a distancia de 150 metros de cada extremo de la misma y de 150 metros delante de todo lugar donde las operaciones que se efectúan obstaculicen el uso de la carretera para el tránsito, inclusive todo punto intermedio donde la nueva obra se cruza y coincide con la carretera ya existente".

(⁵) Esta tabla está computada tomando por base el conductor promedio. Obviamente debe aceptarse como aproximada.

sados. *Prado* v. *Quiñones,* 78 D.P.R. 322 (1955) ; *Cole* v. *Escambrón Development Co.,* 73 D.P.R. 520 (1952) ; *García* v. *Gobierno de la Capital,* 72 D.P.R. 138 (1951) ; *Rivera* v. *Great Am. Indemnity Co.,* 70 D.P.R. 825 (1950) ; *González* v. *White Star Bus Line, Inc.,* 53 D.P.R. 659 (1938) ; *Cubano* v. *Jiménez,* 32 D.P.R. 167 (1923). Eso fue precisamente lo ocurrido en el caso de autos según la determinación del juez de instancia. El accidente se debió a la negligencia combinada del conductor del vehículo donde viajaban los demandantes—por conducirlo negligentemente a una velocidad exagerada—y del Estado y los contratistas—por no tener las barreras, avisos y luces necesarias para avisar de la proximidad del peligro.

Es como expresó el juez sentenciador : se requería que concurrieran los dos actos negligentes para que ocurriera el accidente, pues aún sin los avisos y luces requeridos, el accidente no hubiera ocurrido si el automóvil hubiera sido conducido a una velocidad moderada, pero tampoco hubiera ocurrido si hubiera habido las luces y el aviso, aunque la velocidad del automóvil hubiera sido excesiva. Fue la concurrencia de ambos actos negligentes lo que ocasionó el accidente.

El contratista Zequeira impugna la determinación del juez de instancia al efecto de que a la fecha en que ocurrió el accidente, en la madrugada del 26 de diciembre de 1955, todavía la parte de la obra a su cargo no había sido terminada. Funda su contención en una comunicación oficial del Departamento de Obras Públicas donde se hace constar que la obra fue aceptada con fecha 22 de diciembre de 1955. Pero la prueba demuestra que con posterioridad a esa fecha, hasta el 10 de enero siguiente, Zequeira continuó a cargo de la obra corrigiendo unos defectos que se señalaron el día de la inspección, que fue el referido día 22 de diciembre y que aparentemente una vez corregidos los defectos, se dió retroactividad a la aceptación a la fecha de la inspección. No tiene mérito la impugnación.

## III

Los contratistas se quejan de la cuantía de la indemnización concedida a Flor María Cruz—$30,000. Miguel Morales Muñoz no está de acuerdo con la compensación de $5,000 concedida.

La sentencia recurrida establece que Flor María Cruz "perdió el ojo derecho y sufrió una herida desde el puente de la nariz hasta la mejilla derecha". Estuvo 15 días hospitalizada. Era divorciada, tenía 38 años de edad, dos hijos y de oficio costurera. Usa un ojo artificial. Antes del accidente tenía ingresos de $150 mensuales que fueron reducidos a $40.

Morales Muñoz sufrió una fractura de la tibia y la fíbula derecha. Estuvo recluído en un hospital durante diez días, enyesado durante ocho meses y se vió impedido de trabajar durante siete. Ganaba $100 mensuales. No puede correr ni dedicarse a los deportes. Tenía a la fecha del accidente alrededor de 32 años de edad. ■

*Consideradas todas las circunstancias, entendemos que la compensación concedida a Flor María es adecuada y razonable pues no solo incluye la indemnización por los sufrimientos y angustias sufridos con motivo del accidente sino que trata de compensar la disminución en su capacidad productiva, teniendo en cuenta que tiene dos dependientes y se dedica a un oficio para la práctica del cual una buena visión es esencial. La indemnización concedida a Morales Muñoz no la consideramos razonable. Estuvo ocho meses enyesado y con motivo del accidente su capacidad para desempeñarse como una persona normal ha quedado impedida ya que no puede correr ni dedicarse a los deportes. Así su compensación debe aumentarse hasta la cantidad de $10,700. Se dictará sentencia de conformidad.*