ORLANDO CÁRDENAS MAXÁN e IVONNE HERNÁNDEZ DÍAZ, ETC., demandantes y recurridos, *v.* JOSÉ RODRÍGUEZ RODRÍGUEZ y el ESTADO LIBRE ASOCIADO, demandados y recurrente el último.

*Número:* RE-88-223    *Resuelto:* 9 de marzo de 1990

704

*Rafael Ortiz Carrión, Procurador General, Anabelle Rodríguez* y *María Adaljisa Dávila, Procuradoras Generales Auxiliares,* abogados del recurrente; *Freddie A. Sánchez Guardiola, Félix G. Guardiola Márquez* y *Ángel de Jesús Sepúlveda,* abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

## I

El domingo 10 de junio de 1984, aproximadamente a las 11:15 A.M., Orlando Cárdenas Maxán transitaba en su vehículo *Jeep* por la carretera Núm. 1 en compañía de su esposa Ivonne Hernández Díaz y tres (3) sobrinos menores de edad. Cárdenas Maxán discurría por el carril izquierdo en dirección de norte a sur, esto es, de Río Piedras a Caguas. Simultáneamente, por el carril derecho —en la misma dirección— conducía José Rodríguez Rodríguez su automóvil *Toyota.*

Así las cosas, en el Kilómetro 29.3, el vehículo de Rodríguez Rodríguez impactó violentamente el de Cárdenas Maxán por el área de la puerta del lado derecho. A consecuencia de la colisión, el vehículo de Cárdenas se volcó y dio varias vueltas sobre el pavimento, sufriendo lesiones serias sus ocupantes.(1)

El 8 de enero de 1985 los esposos Cárdenas-Hernández, por sí y en representación de su sociedad de bienes gananciales, instaron ante el Tribunal Superior, Sala de Caguas, demanda contra Rodríguez Rodríguez. Alegaron que "la causa *exclusiva, directa y próxima* del accidente en cuestión lo fue la falta de cuidado, circunspección, culpa y negligencia del conductor demandado". Posteriormente, el 5 de abril de 1985 enmendaron la demanda para incluir al Estado Libre Asociado. Adujeron nuevamente, según expuesto, que el accidente se debió única y exclusivamente a la culpa y negligencia de Rodríguez Rodríguez, pero alegaron contra el Estado —como causa concurrente— que por estar la carretera Núm. 1 agrietada y defectuosa como resultado de la falta de conservación y mantenimiento, éste era responsable de los daños conforme lo dispuesto en el Art. 404 del Código Político, 3 L.P.R.A. sec. 422. Ambos demandados negaron responsabilidad.

El tribunal de instancia (Hon. Julio Berríos Jiménez, Juez), luego de celebrada una conferencia con antelación al juicio e informe, señaló la vista en su fondo para el 9 de junio de 1986. En esa fecha, antes de comenzar, los demandantes Cárdenas-Hernández presentaron un escrito titulado "Moción de relevo", informativo de haber transigido su reclamación contra Rodríguez Rodríguez por la suma de $5,000. El Estado se opuso, solicitó la paralización de los procedi-

---

(1) La señora Hernández Díaz sufrió fractura de la pelvis y cadera. Uno de sus sobrinos tenía una herida en la cabeza que requirió veinticinco (25) puntos de sutura. Los restantes ocupantes sufrieron diversos golpes y laceraciones.

mientos y autorización para formular demanda de tercero contra Rodríguez Rodríguez. Dicho foro acogió la moción de relevo por transacción como un desistimiento, la declaró con lugar, denegó la paralización y dio inicio a la vista. Al otro día, el Estado reiteró su pedido, esta vez en un escrito denominado *Moción informativa y solicitud de que se permita traer como tercero demandado al codemandado José Rodríguez Rodríguez y una demanda contra tercero*. El tribunal de instancia reiteró su negativa.

Con vista a la prueba testifical y documental de las partes, oportunamente declaró con lugar la demanda. Determinó que la única causa del accidente fue la existencia de desperfectos —hoyos y grietas— en la carretera Núm. 1, Kilómetro 29.3, y que los demandantes Cárdenas-Hernández habían sido negligentes al no usar los cinturones de seguridad. Luego de reducir la partida correspondiente al por ciento de negligencia comparada, les concedió la cantidad total de $238,371.75.

Inconforme, el Estado solicitó ante nos revisión. El auto fue expedido el 10 de diciembre de 1986. Previo los trámites de rigor, por los fundamentos procesales expuestos en la opinión *Cárdenas Maxán v. Rodríguez Rodríguez*, 119 D.P.R. 642 (1987), anulamos el auto expedido. Devuelto el mandato, luego de una vista en cámara, el tribunal de instancia emitió nueva sentencia que en esencia reproduce fiel y exactamente su dictamen original, salvo que aumentó la cuantía a $268,371.75.

Nuevamente, a solicitud del Estado, acordamos revisar. De los errores señalados,(2) en buena metodología adjudicativa analizaremos el siguiente:

---

(2) El Estado planteó, además:
"*PRIMER ERROR*:
"Erró el Tribunal Superior al no suspender la celebración del juicio en el caso de autos el primer día de la vista y al no permitirle al Estado Libre Asociado

ERR[Ó] el Tribunal Superior al resolver que el Estado Libre Asociado le respondía a los demandantes en un 75% y no determinar que el señor *José Rodríguez Rodríguez fue el único causante del daño*, o en la alternativa, que fue co-causante del mismo. (Énfasis suplido.) Solicitud de revisión, pág. 9.

## II

El Art. 404 del Código Político, *supra*, constituye el precepto especial para evaluar acciones por daños emergentes de desperfectos, falta de reparación o de protección suficientes para el viajero en cualquier vía de comunicación perteneciente al Estado. La norma de responsabilidad contenida en el mismo es una de las excepciones a la inmunidad que éste, como soberano, posee contra reclamaciones no autorizadas.[3] *Publio Díaz v. E.L.A.*, 106 D.P.R. 854, 862 (1978). Dicho precepto no constituye una norma de responsa-

---

instar una demanda a tercero contra el señor José Rodríguez Rodríguez.

"*TERCER ERROR*:

"Erró el Tribunal Superior al resolver que en demandas instadas contra el Estado Libre Asociado bajo las disposiciones del Artículo 404 del Código Político —tal y como ocurrió en el caso de autos— no le son de aplicación los límites de cuantía contenidos en la Ley Núm. 104 de 29 de junio de 1955, según enmendada.

"*CUARTO ERROR*:

"Erró el Tribunal Superior al resolver que la Ley Núm. 104 de 29 de junio de 1955 no es más que una defensa afirmativa y que en el caso de autos la misma fue renunciada.

"*QUINTO ERROR*:

"Erró el Tribunal Superior al conceder una partida por concepto de lucro cesante a la Sociedad Legal de Gananciales compuesta por los demandantes ya que no se estableció, mediante prueba fehaciente a esos efectos, que la capacidad productiva de la señora Hernández Díaz hubiera menguado como resultado directo del accidente sufrido.

"En la alternativa se señala que de proceder tal partida, erró el Tribunal Superior al hacer el cálculo correspondiente."

(3) Estipula: "El Estado Libre Asociado de Puerto Rico será responsable civilmente de los daños y perjuicios que se ocasionen a las personas o propiedades por desperfectos, falta de reparación o de protección suficientes para el viajero en cualquier vía de comunicación perteneciente al Estado Libre Asociado y a cargo del Departamento de Obras Públicas, excepto donde se pruebe que los desperfectos de referencia fueron causados por la violencia de los elementos y que no hubo tiempo suficiente para remediarlos." 3 L.P.R.A. sec. 422.

bilidad absoluta, ya que el propio estatuto dispone —como excepción— que el Estado no será responsable si demuestra que los desperfectos en las vías públicas estatales fueron causados por la violencia de los elementos y no hubo tiempo suficiente para remediarlos. También reiteradamente hemos sostenido que el mismo tiene tangencia y se nutre de los elementos preceptuados en el Art. 1802 de nuestro Código Civil, 31 L.P.R.A. sec. 5141. *Publio Díaz v. E.L.A.*, supra, pág. 864; *Morales Muñoz v. Castro*, 85 D.P.R. 288 (1962). En vista de ello, en estricta juridicidad, su interpretación no excluye —en circunstancias apropiadas— la posible aplicación de la doctrina de negligencia comparada o, más aún, la imputación total de negligencia al conductor. Esta visión significa que el Art. 404 del Código Político, *supra*, no convierte al Estado en un garantizador absoluto de la seguridad de las personas que utilizan las carreteras públicas. *Rivera v. Pueblo*, 76 D.P.R. 404, 407 (1954). No exige que todas las vías de comunicación y aceras estén en perfectas condiciones. Así, el Estado no responde por todo riesgo imaginable o desperfectos, sino de los razonablemente predecibles y anticipables, y claro está, cuando se demuestre causalidad. A fin de cuentas, sería imposible requerirle que en todo momento las avenidas, carreteras, caminos y aceras del país estén en condiciones ideales.

Por otro lado, la diferencia crucial entre el Art. 404 del Código Político, *supra*, y el Art. 1802 del Código Civil, *supra*, es que no se exige, como elemento de la causa de acción, que se pruebe culpa o negligencia por parte del Estado. No obstante, quien reclama tiene *siempre* la obligación de probar la *relación causal* entre los desperfectos en la vía pública y los daños sufridos. Dicho de otro modo, entre el evento culposo y el daño sufrido ha de existir el elemento de nexo causal característico de toda acción de este género. Por lo tanto, la mera invocación del Art. 404 del Código Político, *supra*, no libera a un demandante de probar que los desper-

fectos en las vías públicas fueron la causa eficiente del accidente.

## III

En materia de relación causal nos regimos por la teoría de la causalidad adecuada. *Jiménez v. Pelegrina Espinet*, 112 D.P.R. 700 (1982); *Soc. de Gananciales v. Jerónimo Corp.*, 103 D.P.R. 127 (1974). Conforme esta teoría, no es "causa" toda condición sin la cual no se hubiera producido el resultado, sino aquella que ordinariamente lo produce, según la experiencia general. A su amparo, la cuestión se reduce a determinar si la ocurrencia del daño era de esperar en el curso *normal* de los acontecimientos o si, por el contrario, queda fuera de ese posible cálculo. J. Santos Briz, *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Rev. Der. Privado, 1984, T. XXIV, pág. 267. Siguiendo esta tónica, en caso de concurrencia de causas, hemos resuelto que la cuestión a dilucidar es cuál de las causas fue la eficiente. Es decir, hay que estimar como decisiva la que por sus circunstancias determina el daño. *Valle v. Amer. Inter. Ins. Co.*, 108 D.P.R. 692, 697 (1979); *Toro Lugo v. Ortiz Martínez*, 113 D.P.R. 56 (1982). En *Valle v. Amer. Inter. Ins. Co.*, supra, ante una colisión en cadena —en la que el conductor del segundo vehículo demandó únicamente a la conductora del tercero y a quien el tribunal de instancia le impuso responsabilidad absoluta por ésta haberse detenido demasiado cerca detrás del vehículo del demandante— resolvimos que el tercer vehículo no fue la causa eficiente de los daños sufridos por el segundo, y sí lo fue la conducción del sexto vehículo. Más aún, dictaminamos que de existir concurrencia de culpas, la decisiva fue la del sexto vehículo. De igual modo, en *Toro Lugo v. Ortiz Martínez*, supra, al aplicar la doctrina de causa eficiente, expresamos que *cuando es evidente la desproporción entre culpas causantes de un daño,*

*la mayor absorbe totalmente la otra y excluye la aplicación
de la norma de negligencia comparada.*

## IV

A la luz de esta exposición doctrinaria, los hechos peculiares del caso ante nos impiden imponer responsabilidad al Estado. La determinación fáctica crucial en que el foro de instancia fundó su criterio es que el accidente ocurrió "debido al mal estado de la superficie de la carretera núm. 1, kilómetro 29.3, ya que la misma no es una continua y pareja y a consecuencia de las grietas y los hoyos en la misma provocó que el Sr. José Rodríguez Rodríguez perdiera el control de su automóvil y fuera a impactar el auto de los reclamantes por el lado de la puerta del pasajero delantero derecho estando húmeda la superficie de la carretera por lo que estaba resbalosa". Opinión y sentencia de 10 de junio de 1986, pág. 2.

Sin embargo, esa determinación no tiene apoyo en la prueba cardinal descriptiva del accidente. En la vista, Rodríguez Rodríguez testificó que *conocía* la existencia de las grietas y de los hoyos en la carretera Núm. 1, pues viajaba frecuentemente por la misma. T.E., págs. 150–154. También, que la mañana en que ocurrieron los hechos la carretera estaba *un poco húmeda*. T.E., pág. 153. Además, declaró que viajaba a una velocidad aproximada de 25 a 30 m.p.h. (T.E., pág. 152), que al acercarse a un hoyo aplicó *levemente* los frenos, *redujo* la velocidad, y al hacerlo el carro patinó, se *barrió de atrás*, inmediatamente metió el guía hacia la izquierda para tratar de enderezarlo y patinó nuevamente. También, expresó que al impactar el hoyo las ruedas temblaron, el carro se levantó del frente, el guía no cedió, *el carro se aceleró automáticamente* y corrió hacia el carril izquierdo ocurriendo el impacto. Por último, agregó que todo sucedió en cuestión de segundos. T.E., págs. 187–196.

■ Con vista a ese testimonio y a la prueba documental representativa del impacto —fotografías del pavimento— curso del vehículo y gravedad del accidente, resulta físicamente irreal concluir que Rodríguez Rodríguez estuviera conduciendo su vehículo a tan sólo 25 m.p.h.,[4] y que a esa velocidad la existencia de los hoyos fuera la causa eficiente que ocasionara su falta de control. *No podemos olvidar que por ese mismo carril y pavimento presumiblemente transitaron momentos antes, innumerables —por no decir cientos— de vehículos sin dificultad alguna.* Una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal. *Vélez v. Srio. de Justicia,* 115 D.P.R. 533, 545 (1984); *Vda. de Morales v. De Jesús Toro,* 107 D.P.R. 826, 829 (1978). El propio Cárdenas Maxán en el interrogatorio al que fuera sometido —luego de exponer que "presentía" que cuando Rodríguez Rodríguez lo impactó venía a *exceso de velocidad* (T.E., págs. 110–111)— aclaró que al momento del impacto "venía a exceso de velocidad". T.E., pág. 112. Por otro lado, Héctor Delgado Alicea, testigo del Estado, declaró que un automóvil que transita a 25 m.p.h. y pasa sobre unas grietas como las que había en la carretera Núm. 1, no pierde el control de la forma y manera que lo hizo el de Rodríguez Rodríguez.[5]

---

[4] El tribunal de instancia, en su Determinación de Hechos Núm. 3, expresó que "[e]l Sr. José Rodríguez Rodríguez conducía de 25 a 30 m.p.h. el vehículo de motor marca Toyota, por el carril derecho de la carretera PR 1 y al llegar al kilómetro 29.3, existían hoyos y muchas grietas largas desde una a diez pulgadas de anchura y una a doce pulgadas de profundidad, perdiendo el control y al llegar al hoyo más profundo, su vehículo de motor resbaló súbitamente y se barrió, dando lugar al impacto recibido por los reclamantes quienes transitaban en el carril izquierdo a una velocidad aproximada de 25 a 28 millas por hora". Opinión y sentencia de 10 de junio de 1986, pág. 3.

[5] Delgado Alicea —actualmente retirado— trabajó para el Departamento de Obras Públicas, Oficina Regional de Humacao, por un período de quince (15) años, como investigador de posibles demandas y reclamaciones contra el Estado. Como parte de su trabajo, realizó una investigación sobre el accidente en cuestión al poco tiempo de su ocurrencia. El tribunal de instancia descartó su versión

Ante este trasfondo fáctico, no albergamos dudas de que el factor precipitante del daño no fue la existencia de hoyos y grietas en la vía pública. A todas luces, la causa eficiente del accidente fue la negligencia de Rodríguez Rodríguez al manejar su vehículo de motor a una velocidad mayor de la que le permitía ejercer el debido dominio del mismo ante la existencia de las condiciones especiales y evidentes de la carretera, que él conocía.

■ *Conducir un vehículo de motor implica ciertos riesgos*. Potencialmente están relacionados con las condiciones —permanentes o temporales— de las carreteras. Muchos son palpables a la simple vista del conductor, tales como curvas, poco ancho, falta o inadecuada iluminación, *humedad, grietas o fisuras en la zona de rodaje*. Además, un riesgo normal inherente es el asociado con el tránsito de otros conductores y vehículos de motor.

■ La regla *básica* de "velocidad relativa" consagrada en la Ley de Vehículos y Tránsito de Puerto Rico recoge esta realidad. Configura el principio elemental de que la "velocidad de un vehículo deberá regularse con el *debido cuidado*, teniendo en cuenta el ancho, tránsito, uso y *condiciones de la vía pública. Nadie deberá guiar a una velocidad mayor de la que le permita ejercer el debido dominio del vehículo y reducir la velocidad o parar cuando sea necesario para evitar un accidente.* De conformidad con los requisitos expresados anteriormente toda persona deberá conducir a una velocidad segura y adecuada al acercarse y cruzar una intersección o cruce ferroviario, al acercarse a la cima de una pendiente, al viajar por una carretera estrecha o sinuosa, *o cuando existan peligros especiales con respecto a*

---

sobre la investigación, hallazgos y descripción del lugar del accidente por entender que su testimonio confligía con la evidencia material que obraba en el expediente. Opinión y sentencia de 10 de junio de 1986, pág. 3.

*peatones u otro tránsito o por razón del tiempo o las condiciones de la vía pública*". (Énfasis suplido.) 9 L.P.R.A. sec. 841(a). Véase *Vda. de Vila v. Guerra Mondragón,* 107 D.P.R. 418 (1978).

Según estos principios, no podemos coincidir con la conclusión del foro de instancia de que el accidente se debió a la negligencia del Estado por no dar debido mantenimiento a la carretera Núm. 1. No representa el balance más racional, justiciero y jurídico de la totalidad de la evidencia presentada y, por ende, la misma no debe prevalecer. *Vélez v. Srio. de Justicia,* supra, pág. 546. Lo contrario sería exigirle al Estado el deber imposible e irrazonable de mantener las veinticuatro (24) horas del día todas las vías de comunicación en perfectas condiciones. La cantidad de tráfico vehicular que transita por nuestras calles y avenidas, las condiciones climatológicas tropicales de Puerto Rico y las limitaciones económicas y humanas del Estado impiden ese curso decisorio.

En el caso de autos, aún existiendo concurrencia de culpas, la decisiva fue la de Rodríguez Rodríguez. *Valle v. Amer. Inter. Ins. Co.,* supra, pág. 698; *Toro Lugo v. Ortiz Martínez,* supra, pág. 57.

Por los fundamentos anteriormente expuestos, *se dictará sentencia revocatoria.*

El Juez Asociado Señor Hernández Denton emitió opinión disidente, a la cual se unen el Juez Asociado Señor Rebollo López y la Juez Asociada Señora Naveira de Rodón.

—O—

Opinión disidente emitida por el Juez Asociado Señor Hernández Denton, a la cual se unen los Jueces Asociados Señor Rebollo López y Señora Naveira de Rodón.

Disentimos hoy por entender que el tribunal de instancia realizó una correcta apreciación de la prueba y porque acertadamente concluyó que el Estado Libre Asociado era responsable en un 75% de los daños sufridos por los demandantes como consecuencia de los desperfectos existentes en el Km. 29.3 de la carretera Núm. 1 en Caguas.

Al así entenderlo no podemos refrendar la posición de la mayoría de esta Curia que, para eximir de responsabilidad al Estado, sustituye la apreciación de los hechos que tuvo ante sí el foro de instancia.

I

Los hechos en este caso, según *evaluados* y *aquilatados* por el foro de instancia, consisten en que el 10 de junio de 1984, a eso de las 11:15 de la mañana, el codemandante Orlando Cárdenas Maxán conducía su automóvil *Jeep* por la carretera Núm. 1 en la jurisdicción del pueblo de Caguas. Transitaba *por el carril izquierdo* a una velocidad aproximada de 25 a 30 millas por hora en dirección de norte a sur. Lo acompañaba su esposa, la codemandante Ivonne Hernández Díaz y tres (3) sobrinos menores de edad.

Por el carril derecho transitaba, *paralelo* a él, el codemandado José Rodríguez Rodríguez conduciendo su automóvil *Toyota* aproximadamente a la misma velocidad. Al llegar al *Km. 29.3* de la referida vía pública, Rodríguez Rodríguez observó que en el carril que transitaba había una serie de hoyos y grietas. Aplicó levemente los frenos y notó que su carro comenzó a resbalar y a "zigzaguear". En un esfuerzo por recuperar el control total del mismo, el codemandado giró hacia la izquierda, pero no pudo evitar impactar, por el centro del lado derecho, al *Jeep* que conducía Cárdenas Maxán. Tras el impacto recibido, el *Jeep* chocó con una muralla de protección que estaba a su izquierda y que dividía la carretera. Como consecuencia, el *Jeep* se volcó varias veces,

expulsando a los pasajeros[1] a la carretera. Este aparatoso accidente produjo serios daños al vehículo, así como considerables daños físicos y emocionales a los codemandantes.

Ante esa aprueba, el tribunal a quo concluyó que la causa próxima del accidente fue el mal estado y los desperfectos de la carretera Núm. 1, al no existir una superficie pareja y continua sino una con hoyos y grietas. Por tal razón le impuso responsabilidad al Estado Libre Asociado de Puerto Rico quien, por la falta de conservación y mantenimiento de la referida carretera, permitió el surgimiento de una situación peligrosa. Finalmente, especificó que los desperfectos, falta de reparación o de protección suficiente de los viajeros de la carretera Núm. 1, Km. 29.3, no fueron causados por fuerza mayor o caso fortuito y que el Estado tuvo suficiente tiempo para remediarlos.

## II

Los hechos de este caso se enmarcan en el Art. 404 del Código Político, 3 L.P.R.A. sec. 422. Este precepto de ley nos dice:

El Estado Libre Asociado de Puerto Rico será responsable civilmente de los daños y perjuicios que se ocasionen a las personas o propiedades por desperfectos, falta de reparación o de protección suficientes para el viajero en cualquier vía de comunicación perteneciente al Estado Libre Asociado y a cargo del Departamento de Transportación y Obras Públicas, excepto donde se pruebe que los desperfectos de referencia fueron causados por la violencia de los elementos y que no hubo tiempo suficiente para remediarlos. 3 L.P.R.A. sec. 422.

Este artículo impone la obligación al Gobierno de mantener en "buen estado" las carreteras estatales del país. Esta

---

[1] Quedó establecido que los codemandantes no hacían uso del cinturón de seguridad. Por tal razón, el tribunal les impuso un 25% de responsabilidad. Opinión y sentencia de 10 de junio de 1986, pág. 9.

obligación es de carácter primario e indelegable. *Resto v. P.R. Telephone Co.*, 97 D.P.R. 313, 319 (1969); *Morales Muñoz v. Castro*, 85 D.P.R. 288, 293 (1962); *Díaz v. E.L.A.*, 118 D.P.R. 395, 416 (1987), opinión concurrente y disidente del Juez Asociado Señor Rebollo López. En cumplimiento con esa obligación el Estado tiene el rol afirmativo de tomar aquellas medidas necesarias y preventivas a la ocurrencia de daños en las vías públicas. Véase *Publio Díaz v. E.L.A.*, 106 D.P.R. 854, 865 (1978).

Aunque hemos señalado que el Art. 404 del Código Político, *supra*, no convierte al Estado en un garantizador de la seguridad de las personas, *Rivera v. Pueblo*, 76 D.P.R. 404 (1954), no es menos cierto que el estatuto le impone responsabilidad civil cuando los usuarios de las vías públicas sufran daños como consecuencia de *desperfectos, falta de reparación o protección suficiente* de sus avenidas. *Publio Díaz v. E.L.A.*, supra, pág. 862; *Morales Muñoz v. Castro*, supra, pág. 292.

Para prosperar en una causa de acción al amparo de este artículo, le corresponde al promovente probar que las vías públicas se encuentran en las condiciones antes mencionadas, así como el nexo causal entre el daño y éstos. Para que el Estado no incurra en responsabilidad civil, tiene que probar que las condiciones de la vía pública *fueron motivadas por la violencia de los elementos y que no hubo tiempo suficiente para remediarlos. Publio Díaz v. E.L.A.*, supra, pág. 863; *Resto v. P.R. Telephone Co.*, supra, págs. 319–320; *Morales Muñoz v. Castro*, supra.

Por último, de incurrir el promovente en negligencia, hemos reconocido que bajo esta causa de acción es de aplicación la doctrina de negligencia comparada. *Publio Díaz v. E.L.A.*, supra, pág. 867.

### III

Expuesta la normativa jurídica aplicable al caso de autos y de un examen de la transcripción de evidencia elevada ante nos, concluimos que el tribunal de instancia actuó correctamente en su apreciación de la prueba y en la aplicación del derecho a esta situación particular. Veamos.

Los demandantes presentaron amplia prueba testifical y material para sustentar su teoría de que los hoyos y grietas del Km. 29.3 de la carretera Núm. 1 fueron la causa eficiente del daño. El codemandante Cárdenas Maxán testificó que transitaba por la referida vía pública como a las once de la mañana, cuando cerca del Restaurant El Paraíso tuvo que tomar el carril izquierdo ya que el derecho estaba lleno de hoyos. T.E., págs. 54–56 y 68. Que al pasar por el Km. 29.3 notó que había un desnivel entre el carril izquierdo y el derecho. T.E., pág. 59. Conduciendo a una velocidad de aproximadamente 25 millas, se percató de que el codemandado Rodríguez Rodríguez se estaba "barriendo" a su lado cuando recibió el impacto por el centro del lado derecho de su *Jeep*. T.E., pág. 87. Indicó que el codemandado Rodríguez Rodríguez le había manifestado que le había chocado porque cogió un hoyo y perdió el control. T.E., pág. 99. Sobre este particular el testigo indicó que los hoyos eran bastante grandes. T.E., págs. 122–124.

La opinión mayoritaria concluyó que el codemandado Rodríguez Rodríguez venía a exceso de velocidad y que esa fue la causa eficiente del accidente. Tal conclusión no tiene apoyo en la prueba. A lo sumo lo que refleja la transcripción de evidencia es que en el contrainterrogatorio a que fue sometido el codemandante Cárdenas Maxán, éste expresó que *presentía que el codemandado venía a exceso de velocidad el día de los hechos.* Por su gran pertinencia, reproducimos esa línea de interrogatorio:

LCDO. QUIJANO

P. Es decir, que usted a pesar de que iba mirando hacia el frente usted vio que este señor venía a exceso de velocidad. ¿Cierto o falso?

R. No.

P. No. Y qué dice ahí, testigo, que yo . . .

R. Bueno, yo me presen . . . me presentí eso, porque . . .

P. Ajá.

R. . . . a la velocidad que se estaba barriendo . . .

P. ¡Ah', que . . .

R. . . . porque cuando un carro se barre no se barre lento, porque él no dio una vuelta, [é]l dio como dos o tres.

P. Entonces, usted no vio que él venía a exceso de velocidad.

R. No.

P. No lo vio. No lo vio. No lo vio. Ahora, usted presume que venía a exceso de velocidad, a base de esa contestación, o le . . . le pregunto, ¿eso es lo . . . eso es lo que usted presume?

R. Bueno, a base de esa contestación ahí está escrito eso, pero ahora mismo . . .

P. Bueno, pero eso lo suscribió usted ba . . . bajo juramento, mire a ver.

R. Bueno, sí, sí, este, fui yo.

P. Yo pregunto, que qué fue lo que usted percibió. Si fue que lo vio con sus ojos o percibió que venía a exceso de velocidad ese señor.

R. *Yo presentí que venía a exceso de velocidad en la forma que se barrió de le . . . al lado mío.* (Énfasis suplido.) T.E., págs. 110-111.

El testimonio del codemandado Rodríguez Rodríguez básicamente corroboró lo apuntado por el testigo Cárdenas Maxán. Éste añadió que iba a una velocidad de 25 a 30 millas (T.E., pág. 152), paralelo al *Jeep* de Cárdenas Maxán (T.E., págs. 173-174) y que al caer en el hoyo y las grietas su *carro se barrió haciendo zigzag.* T.E., pág. 171.

En el contrainterrogatorio, el Estado trató de impugnar al testigo sobre el exceso de velocidad, utilizando una contestación brindada por éste en un interrogatorio. Esa línea de preguntas reforzó el hecho de que ambos vehículos iban a una velocidad moderada. T.E., págs. 195-196.

Los demandantes presentaron en evidencia fotografías que describían el lugar de los hechos y en las cuales se reflejaban la magnitud de los hoyos y las grietas. Véase Opinión y sentencia de 10 de junio de 1986, pág. 3.

Finalmente, y para probar que los desperfectos se debieron a la falta de conservación y mantenimiento del Estado, se admitió en evidencia un informe de trabajo *Diario del Año 1984* de la Brigada de Conservación Núm. 3 de la Oficina Regional de Humacao del Departamento de Transportación y Obras Públicas. Este informe refleja que antes de la fecha de los hechos, a la carretera Núm. 1 se le dio mantenimiento a un sinnúmero de kilómetros, *entre los cuales no estaba el 29.3*.[2]

Por otro lado, el Estado sólo presentó el testimonio del señor Delgado, investigador del Departamento de Transportación y Obras Públicas. Este testigo no fue cualificado como perito. T.E., págs. 393–396 y 415–418. Testificó solamente a los fines de establecer que las grietas de la carretera eran insignificantes. En el contrainterrogatorio admitió que la carretera Núm. 1 había sido trabajada por la División de Ornato en el 1984. T.E., págs. 427–429. El tribunal no le concedió crédito a este testimonio por ser contrario a la prueba documental admitida. A pesar de todo esto, la opinión mayoritaria le da crédito pericial a este testimonio para tratar de sostener desde este estrado apelativo su teoría de que el factor precipitante fue la negligencia del codemandado Rodríguez Rodríguez.

Finalmente, el Estado *no* presentó prueba alguna que sostuviera que los desperfectos de la carretera se debieron a la violencia de los elementos o a caso fortuito para de esa forma estar exento de responsabilidad.

---

[2] Este documento refleja que los siguientes kilómetros recibieron mantenimiento en distintas fechas antes de 10 de junio de 1984: 26.9, 27.8, 28.4, 30.2, 30.9, 34.8, 34.9.

Como hemos expuesto, es claro que el demandante estableció por preponderancia de la prueba todos los elementos constitutivos del Art. 404 del Código Político, *supra*. El Estado falló en probar sus defensas. No encontramos a través del examen de la prueba el más mínimo indicio de error, prejuicio o parcialidad del tribunal a quo tanto al evaluar como al aquilatar la prueba presentada ante él. Su determinación de la suficiencia de la prueba y de la credibilidad de los testigos fue correcta y no hay indicios de abuso de discreción. En tales circunstancias, el tribunal a quo merece toda nuestra deferencia. *La Costa Sampedro v. La Costa Bolívar*, 112 D.P.R. 9, 19 (1982); *Morán Simó v. Gracia Cristóbal*, 106 D.P.R. 155, 161 (1977); *Ortiz v. Cruz Pabón*, 103 D.P.R. 939, 946–947 (1975). Contrario a las mejores normas de revisión apelativa, la mayoría hoy sustituye las determinaciones de hecho del tribunal recurrido, convirtiéndose "inadvertida e inconscientemente . . . en testigos peritos y oculares" del Estado. *Díaz v. E.L.A.*, supra, pág. 412, opinión concurrente y disidente del Juez Asociado Señor Rebollo López.

Independientemente de nuestra opinión personal de la sabiduría del Art. 404 del Código Político, *supra*, si el Estado no presentó la prueba requerida para sostener su posición, en estricta metodología jurídica procede la confirmación de la sentencia recurrida.

Por los fundamentos expuestos, confirmaría la sentencia de instancia.