# 2003 DTA 141

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL I DE SAN JUAN, PANEL I**

654 PLAZA ASSOCIATES, L.P.
Apelado

v.

DR. ALFREDO APONTE CORDOVA
Apelante

Núm. KLAN-2002-00141

San Juan, Puerto Rico, a 8 de septiembre de 2003

Panel integrado por su Presidenta, la Juez Fiol Matta,
y los Jueces González Rivera y Rivera Martínez

González Rivera, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

En el presente recurso comparece el Dr. Alfredo Aponte Córdova (en adelante doctor Aponte) para solicitar

la revocación de una sentencia emitida el 14 de agosto de 2001 por el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante dicho dictamen se le condenó a pagar sobre $140,000.00 en daños y perjuicios. Evaluados los autos ante nos, a la luz del derecho aplicable, resolvemos que es procedente revocar el dictamen apelado.

# I

La parte apelada 654 Plaza Associates L. P. (en adelante 654 Plaza) es una sociedad especial, dueña en pleno dominio de un edificio localizado en la Avenida Muñoz Rivera en Hato Rey. El referido edificio es dedicado al negocio de arriendos para uso comercial. El apelante, doctor Aponte, es un médico dedicado al ejercicio de la gastroenterología. De la transcripción de la prueba oral, se desprende que éste ocupaba desde el año 1979 la oficina núm. 1030 del referido edificio en concepto de arrendatario. Estando su contrato próximo a expirar, le anunció a la arrendadora, 654 Plaza, que proyectaba mudarse. A tales efectos solicitó mediante carta del 12 de julio de 1999, que se le extendiera su nuevo contrato hasta que le entregaran su nueva oficina en la Torre Auxilio Mutuo.

La administradora del edificio le indicó que no podía extender el contrato sobre la oficina núm. 1030, pues tenía un prospecto para arrendar la misma. Como alternativa, le ofreció que se mudara a la oficina núm. 929. En tal virtud, le propuso un arrendamiento de mes a mes sin término fijo de terminación, a base de una renta de $2,116.00 mensuales. Aceptada la propuesta, el doctor Aponte firmó el nuevo contrato y se trasladó a la oficina núm. 929.

A los dos meses de haber suscrito el contrato, el 11 de noviembre de 1999, la arrendadora notificó al doctor Aponte la terminación del mismo. Tal terminación sería efectiva el 31 de diciembre de 1999. No obstante, aún la oficina en la Torre Auxilio Mutuo no había sido entregada al doctor Aponte, por lo que éste decidió permanecer ocupando la oficina 929, a pesar de los requerimientos de la arrendadora.

Así las cosas, el 1 de enero de 2000, la arrendadora le emitió al doctor Aponte una factura al cobro por la renta de ese mes. El doctor Aponte inmediatamente envió el pago, según facturado, pero la arrendadora se lo devolvió y reiteró su deseo de dar por terminado el contrato de arrendamiento.

Habida cuenta de la negativa del doctor Aponte de entregar la oficina, el 14 de enero de 2000, la arrendadora presentó ante el tribunal apelado una demanda de desahucio sumario. Pendiente esa causa de acción, la arrendadora descontinuó el recogido de basura de la oficina del doctor Aponte, suspendió los servicios de limpieza y le canceló a éste la tarjeta de acceso al estacionamiento. La razón aducida por la arrendadora fue que tales medidas estaban contempladas en el contrato para el caso de un incumplimiento contractual. El doctor Aponte, a pesar de que la petición de desahucio fue desestimada por académica, continuó consignando en el tribunal los cánones de arrendamiento según lo estipulado en el contrato.

Surge de los autos del caso, los motivos que tuvo la arrendadora para cancelar el contrato del doctor Aponte. Esta había acordado con la agencia federal, General Services Administration (en adelante GSA) la expansión de sus facilidades localizadas en el piso 8 del edificio. La expansión requería la reubicación de los inquilinos de dicho piso a otros locales de similares proporciones dentro del mismo edificio. De tal modo, la arrendadora decidió relocalizar al Lcdo. Guillermo Arbona en la oficina núm. 929. Sin embargo, la misma estaba ocupada por el doctor Aponte. Ello causó que el licenciado Arbona fuese relocalizado a otra oficina en el piso 16 por la misma renta que estaba pagando en la oficina anterior que ocupaba. Una vez realizados los trabajos de construcción para la GSA, durante el mes de septiembre de 2000 y luego de haberse mudado el doctor Aponte, se logró relocalizar al licenciado Arbona en la oficina núm. 929. Fue en tales circunstancias que se le concedió un crédito a éste por tener que mudarse en dos ocasiones.

Con el anterior trasfondo, el 14 de enero de 2000, la arrendadora presentó la demanda que dio inicio a este

litigio. Invocó como causales, incumplimiento de contrato y daños y perjuicios. Alegó que debido a la conducta del doctor Aponte no pudo realizar a tiempo los trabajos de remodelación necesarios para entregar el local a la GSA, lo que le causó demoras e inconvenientes en el cumplimiento del contrato firmado con esa agencia. Alegó que ello se tradujo en pérdidas económicas que estimó en más de $100,000.00.

Al contestar la demanda, el doctor Aponte negó las alegaciones y reconvino. Para sostener su causa de acción, alegó que la arrendadora incumplió el contrato de arrendamiento y que sin causa legitima canceló el mismo. Además, que le había causado daños al desalojarlo de la oficina número 1030 y forzarlo a firmar un nuevo contrato de arrendamiento por la oficina núm. 929, la cual era más pequeña, tenía menos facilidades y pagaba una renta mayor. Alegó, además, haber sido hostigado al cancelársele su tarjeta de acceso al estacionamiento y al suspendérsele los servicios de limpieza y recogido de basura. Reclamó el pago de una indemnización por los daños continuos sufridos y por angustias mentales y enriquecimiento injusto.

Seguido el trámite procesal y celebrada la vista en su fondo, el foro apelado dictó sentencia el 14 de agosto de 2001. Mediante la misma, declaró "*Con Lugar*" la demanda instada. Desestimó perentoriamente la reconvención por entender que la arrendadora actuó en este caso en el ejercicio de sus derechos contractuales y legales. De ese modo, concluyó que cualquier daño sufrido por el doctor Aponte había sido causado por sus propios actos. En consecuencia, lo condenó a pagar la cantidad de $106,947.69 por concepto de daños contractuales, $10,580.00 por concepto de rentas no pagadas y $15,000.00 por concepto de honorarios de abogado. Ordenó que se le descontaran a dichas cantidades $500.00 que le fueron impuestos a la arrendadora en una vista celebrada el 19 de diciembre de 2000. Asimismo, ordenó el pago de los intereses sobre las anteriores cantidades, desde la fecha de presentación de la demanda, más las costas del litigio.

Agotados sin éxito los procedimientos post-sentencia, el 14 de febrero de 2003, el doctor Aponte presentó el recurso que nos ocupa. Señala como fundamentos de revocación que el tribunal erró al determinar que la arrendadora podía dar por terminado el contrato en cualquier momento, al ordenarle el pago de una penalidad cuádruple por daños y no moderar la pena. Señala, también, que incidió el tribunal al no permitirle presentar el testimonio del licenciado Arbona como testigo de refutación.

Con el beneficio del escrito de la parte apelada en oposición, una transcripción certificada de los testimonios y encontrándonos en la misma posición que el foro de instancia en la apreciación de la prueba documental, estamos en posición de resolver y así procedemos a hacerlo.

## II

La controversia principal en el caso de autos se circunscribe a determinar si la arrendadora podía, de acuerdo a los términos del contrato de arrendamiento suscrito entre las partes, dar por terminado el mismo, a los dos (2) meses de su otorgamiento. Se hace por tanto menester aclarar, de entrada, los principios y criterios a considerarse en el proceso de interpretar los términos de un contrato. En tal proceso, nuestro Código Civil y la jurisprudencia interpretativa han establecido en lo pertinente que "*si los términos de un contrato son claros y no dejan duda sobre la intención de las partes contratantes, se interpretará al sentido literal de sus cláusulas.*"

Ahora bien, sólo podemos considerar como términos claros aquéllos que por sí mismos son lo bastante lúcidos para ser entendidos en su único sentido, sin dar lugar a dudas, controversias sin diversidad de interpretaciones y sin necesitar para su comprensión, razonamientos o demostraciones susceptibles de impugnación. *Sucn. Ramírez v. Tribunal Superior*, 81 D.P.R. 357 (1959).

En este caso, las partes suscribieron voluntariamente un nuevo contrato de arrendamiento el 1 de septiembre de 1999. En lo pertinente, las cláusulas 1.4, 1.5 y 1.6 de éste, disponen lo siguiente:

*"1.4* ***Commencement date or Commencement of the Term:*** *shall have the same meaning, and shall mean*

*September 1, 1999.*

*1.5* ***Expiration Date or Expiration of Term:*** *shall have the same meaning and shall mean September 30th, 1999, unless* ***renewed at the end of the monthly period.***

*1.6* ***Term or Term of this Lease:*** *shall have the same and shall mean month to month beginning on the Commencement Date, and ending on the Expiration Date, renewable at the end of the term,* ***unless sooner terminated. This contract can be renewed every month by remaining on the premises, paying rent or failing to notify fifteen days in advance, that the lease will not be renewed."***

De las anteriores disposiciones contractuales surge con evidente claridad que la intención de las partes fue otorgar el referido contrato con término de mes a mes hasta que el doctor Aponte ejerciera la opción de darlo por terminado. El contrato se renovaría automáticamente mientras el Dr. Aponte se mantuviera en su oficina, pagando los cánones de arrendamiento correspondiente. Aun cuando decidiera abandonar su oficina, el contrato continuaría vigente si no notificaba por escrito con quince (15) días de antelación, su intención de no renovar el mismo. Así surge de la última oración de la cláusula 1.6. Atendiendo el texto claro y el sentido literal de dicha cláusula en el contexto de su redacción, concluimos que la opción de renovar el contrato le fue concedida unilateralmente al doctor Aponte.

Mientras el doctor Aponte no notificara su intención de no renovar el contrato, la relación contractual entre las partes continuaba vigente. La anterior conclusión se fortalece si consideramos en conjunto el Artículo 1.6 con el Artículo 21.8 del contrato el cual dispone:

*"que la terminación* ***unilateral del contrato por el arrendatario*** *mediante entrega de la posesión del local o de sus llaves no constituye la terminación de las obligaciones del arrendatario a menos que el arrendador reconozca por escrito que esa entrega constituye la terminación del contrato."*

De la transcripción de la evidencia y de los autos ante nos, se desprende que en momento alguno fue la voluntad del doctor Aponte dar por terminada la relación contractual hasta que no le entregaran su oficina en la Torre Auxilio Mutuo. Véase cláusula 1.6 del contrato. Por otro lado, es menester señalar que hay varias disposiciones claras del contrato en las que específicamente se expone las circunstancias en las cuales la arrendadora 654 Plaza Associates, podía dar por terminado el contrato. Esto es en caso de destrucción del local por fuego, expropiación forzosa parcial, u otra eventualidad. Véase la cláusula 13.3 y 14.2 del contrato. Evaluados los autos, a la luz de dichas disposiciones, vemos que en el momento en que 654 Plaza Associates dio por terminado el contrato ninguna de dichas circunstancias había ocurrido.

Vistas las anteriores conclusiones, la negativa del arrendador a recibir los cánones de arrendamiento, el hecho de que el doctor Aponte continuó consignando los mismos en el tribunal, concluimos que éste no incurrió en un incumplimiento de los términos del contrato de arrendamiento. Por ende, la arrendadora no tenía derecho a recibir daños por un incumplimiento contractual inexistente o a recibir indemnización en daños por la supuesta retención del local por el doctor Aponte.

Los foros apelativos no intervendrán con la apreciación de la prueba que hizo el foro de instancia en ausencia de pasión, prejuicio, error manifiesto o parcialidad. *Rodríguez v. Nationwide Insurance,* op. 18 de abril de 2002, **2002 J.T.S. 61**; *Colón v. Tienda Kmart,* op. 26 de junio de 2001, **2001 J.T.S. 98**; *Velázquez v. Ponce Asphalt,* 113 D.P.R. 39 (1982). Regla 43.2 de las de Procedimiento Civil, 32 L.P.R.A., Ap. III.

Ahora bien, una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este tribunal, puesto que si bien el arbitrio del juzgador de los hechos es respetable, no es absoluto. *Méndez v. Morales,* 142 D.P.R. 26 (1996); *Cárdenas Maxán v. Rodríguez Rodríguez,* 125 D.P.R. 702 (1990);

*Vda. de Morales v. De Jesús Toro*, 107 D.P.R. 826 (1978).

Expuesto el precedente análisis de los hechos y vistos los términos claros en que está redactado el contrato de arrendamiento que nos ocupa, resolvemos que el Tribunal de Primera Instancia no captó en su justa perspectiva el valor y alcance de la prueba recibida. Resolvemos, por tanto, que en este caso está presente el error manifiesto en la apreciación de la prueba, por lo que procede intervenir con las determinaciones de hechos formuladas por el tribunal *a quo* para revocar la sentencia apelada sin trámites ulteriores. La arrendadora tenía el peso de demostrar el incumplimiento del doctor Aponte con los términos del contrato de arrendamiento. Al haber incumplido con su deber, estamos obligados a desestimar la demanda instada.

Acorde a lo anterior, un examen sereno, desapasionado y minucioso del expediente, que incluye el estudio de la transcripción de la prueba oral, nos convence que la apreciación de prueba por el tribunal sentenciador no representa el balance más racional, justiciero y jurídico de la totalidad de la evidencia desfilada; por consiguiente, no puede prevalecer. *Vélez v. Secretario de Justicia,* 115 D.P.R. 533 (1994), *supra*, 546; *Ramos Acosta v. Caparra Dairy*, 113 D.P.R. 357 (1982); *Abudo Servera v. A.T.P.R.,* 105 D.P.R. 728 (1977).

En vista del resultado al que hemos llegado y considerando la interpretación errónea del foro de instancia al concluir que la arrendadora 654 Plaza estaba en todo su derecho contractual y legal de dar por terminado el contrato y de suspenderle los servicios al doctor Aponte, entendemos procedente ordenar la devolución de este caso al foro de instancia para que, conforme a la prueba que le fue aportada, adjudique los daños reclamados en la reconvención.

Por los motivos expresados, se revoca la sentencia apelada emitida el 14 de agosto de 2001, se ordena la devolución de este caso al foro de instancia para la celebración de los procedimientos que sean necesario en armonía con lo aquí expuesto.

Lo acordó el Tribunal y lo certifica la Secretaria General

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIO 2003 DTA 141**

**1.** Véase el Artículo 1233 del Código Civil, 31 L.P.R.A. sec. 3471; *Luce & Co. v. Junta del Trabajo*, 86 D.P.R. 425 (1962).