Feliciano de Acevedo, Juez Ponente
*663 TEXTO COMPLETO DE LA SENTENCIA
La Autoridad de Carreteras de Puerto Rico (la Autoridad) y Construcciones Carro, S.E. (la Constructora) apelan de la sentencia parcial emitida, el 14 de diciembre de 1995, por el Tribunal de Primera Instancia, Sala Superior de Mayaguez. La misma declaró con lugar la demanda en daños y perjuicios incoada en su contra por Ramón Caldas Hernández (Caldas Hernández), su esposa, Sonia Pagán, y los demás apelados de epígrafe. Se le adjudicó a la Autoridad y a la Constructora, específicamente, responsabilidad solidaria con otras personas no incluidas en el pleito.
Por los fundamentos a ser discutidos más adelante, se modifica la sentencia apelada para imponer responsabilidad, por razón de negligencia comparada, en un 75% a la parte apelante y en Un 25% a la parte apelada. Así modificada, se confirma.
I
La controversia de autos gira en torno a un accidente automovilístico, cuyos hechos fueron, según determinó el Tribunal de Primera Instancia, los siguientes:
"7. En o para el 9 de septiembre de 1995 LA AUTORIDAD DE CARRETERAS DE PUERTO RICO, por conducto del contratista CONSTRUCTORA CARRO realizaba obras de ampliación y reconstrucción de la Carretera PR2 en el tramo de Mayaguez a Añasco, en específico en el tramo que se menciona más adelante en esta Sentencia.
2.... Aproximadamente a las 10:30 de la mañana, a la altura del kilómetro 148 de la Carretera PR2, en el tramo que de Añasco conduce a Mayaguez, el vehículo Toyota 1987 conducido por Manuel Méndez Soto, que transitaba de Mayaguez hacia Añasco, rebasaba por el paseo a los vehículos que transitaban en la misma dirección. En el área donde ocurrió el accidente, en el paseo por el que transitaba Manuel Méndez Soto, había un hoyo o depresión lleno de agua, al caer en el mismo Manuel Méndez Soto perdió el control de su vehículo y fue a impactar al vehículo Van Chevrolet conducido por Carlos Lorenzo Carrero, que era uno de los vehículos a los que rebasaba.

3. El vehículo Chevrolet, como consecuencia de este impacto quedó fuera de control y chocó el auto conducido por José L. López González, el cual transitaba en dirección opuesta, de Añasco a Mayaguez, frente al auto de la parte demandante.

4. El Toyota conducido por Manuel Méndez Soto continuó su marcha descontrolada y fue a impactar el auto Pontiac 1985 conducido por el Demandante, RAMON CALDAS HERNANDEZ, que transitaba en dirección contraria, de Añasco a Mayaguez. Manuel Méndez Soto falleció.

5. En ese momento la fila de vehículos que transitaba de Añasco a Mayaguez lo hacía a aproximadamente 45 millas por hora. En el área del accidente la velocidad máxima fijada es de 50 millas por hora; inmediatamente al frente, hacia Mayaguez, del lugar dónde [sic] quedó detenido este vehículo había un letrero que indicaba que la carretera estaba en construcción y que la velocidad máxima estaba restringida [sic] 35 millas por hora. Ese día por ser Domingo, no se estaba llevando a cabo trabajo alguno.

6. Al ver que el Toyota cayó en el hoyo y perdía el control, Ramón Caldas redujo la velocidad y trató de evadir el impacto echándose hacia el paseo de su carril.

7. El tramo donde ocurrió el accidente era la carretera origina [sic] que constaba de dos (2) carriles; uno en cada dirección, con sus respectivos paseos, sin división alguna entfe carriles de tránsito en dirección opuesta.

8. De la evidencia presentada incluso por la misma parte demandada surge que en ese [sic] área de carretera era común y usual que los conductores utilizaran el paseo como carril de tránsito [sic]. Más aún, a ciertas horas de la semana era pernitido [sic] el tránsito por el paseo. No había rotulación alguna prohibiendo el tránsito por el paseo.

9. El hoyo en el paseo, en el cual cayó el vehículo Toyota conducido por Manuel Méndez Soto era 
*664
deforma casi rectangular y su eje longitudinal era aproximadamente paralelo al eje de la carretera, estaba cerca del centro del paseo. Tenia [sic] aproximadamente 3 pies de ancho por 8 de largo con una profundidad en exceso de 5 pulgadas en su borde, mayor en el centro. Este hoyo se encontraba localizado en el lugar por el cual los vehículos y equipo de construcción entraban y salían del proyecto hacia la carretera en uso.

10. De la forma en que ocurrió el accidente es evidente que los autos que de Añasco transitaban hacia Mayaguez nada podían hacer para evitar que ocurriera el mismo. Aunque hay controversia sobre si el área de velocidad restringida comenzaba más hacia Mayaguez que el lugar del accidente o si el demandante ya se encontraba dentro de dicha área, la diferencia en velocidad entre 35 millas por hora y 45 millas por hora en nada contribuyó al accidente. El vehículo del demandante hubiese recibido el mismo impacto irrespectivo de la velocidad que transitara.

11. No hay controversia sobre el hecho de que el conductor del Toyota, Manuel Méndez Soto fue negligente y su negligencia fue una causa del accidente.

12.Del testimonio del perito de la demandada, Ing. David Eric Cintrón, así como de las inferencias que hace el tribunal, surge que la causa inmedianta [sic] de que el auto Toyota conducido por Manuel Méndez Soto perdiera el control fue que éste cayera en el hoyo que había en el paseo.

13. El área dónde [sic] ocurrió el accidente se encontraba dentro del ámbito de la construcción que llevaba a cabo la AUTORIDAD DE CARRETERAS y CONSTRUCCIONES JOSE CARRO. Estas tenían dicho tramo bajo su control y era su responsabilidad darles mantenimiento.

14. Del hecho de que ese día no había llovido y que el hoyo se encontraba lleno de agua, podemos inferir que el mismo llevaba más de un día allí. Por la localización del hoyo frente al acceso del área donde [sic] realmente se estaban llevando a cabo los trabajos pasados podemos inferir que el hoyo fue causado por el constante uso para el tránsito de los vehículos pesados y equipo de la constructora."

En su dictamen, el Tribunal de Primera Instancia concluyó que la Autoridad y la Constructora fueron negligentes y les hizo responsables solidariamente, junto a otras personas no incluidas en el pleito, de los daños sufridos por Caldas Hernández, su esposa y la sociedad legal de gananciales compuesta por ambos. Inconforme, éstas acudieron ante nos. Se alegó, esencial y sintetizadamente, que erró el foro de primera instancia:

"a.... al no incluir en sus determinaciones de hechos las estipulaciones de hechos acordadas por las partes.

b.... imputarle negligencia concurrente y responsabilidad solidaria a los demandados, no habiendo aportado alegadamente la parte demandante prueba testifical, documental o pericial que sostuviera dicha conclusión de derecho.

c.... al determinar que la negligencia de Méndez Soto fue una causa del accidente, pero no haber determinado al mismo tiempo porciento de responsabilidad, a los fines de establecer nivelación.

d.al no determinar que hubo negligencia comparada de los demandantes, habiendo surgido de la prueba que los demandantes contribuyeron a agravar los daños, al no hacer uso de los cinturones de seguridad, y que Caldas Hernández conducía a una velocidad en exceso de lo permitido en el área."

11
Comenzamos discutiendo, por entender que son de mayor relevancia, las imputaciones relacionadas a la apreciación de la prueba y al concepto de negligencia concurrente. Aduce el apelante que no hubo prueba alguna que sustentara que hubo negligencia por parte de la Autoridad y que le hiciera, por ende, también responsable de los daños. No tiene razón en su planteamiento.
Como norma general, el Estado es responsable ante los daños ocasionados al viajero por los *665 desperfectos, falta de reparación o de protección en cualquier vía de comunicación estatal, a cargo del Departamento de Transportación y Obras Públicas. Artículo 404 del Código Político de 1902, 31 L.P.R.A. see. 422. Su responsabilidad bajo este precepto es más estricta que el deber general de cuidado establecido por el Art. 1802 del Código Civil, 31 L.P.R.A. see. 5141, si bien no constituye una norma de responsabilidad absoluta. Rivera v. Garrido & Co., _ D.P.R. _ (1993), 93 J.T.S. 158, pág. 9,325; Publio Díaz v. E.L.A., 106 D.P.R. 854, 861-863 (1977).
El Estado responderá solamente por aquello razonablemente predecible y anticipable, y siempre y cuando se demuestre, en coincidencia con el mencionado Art. 1802, supra, que hubo causalidad, es decir relación causal entre los desperfectos de la vía y los daños sufridos. Cárdenas Maxán v. Rodríguez Rodríguez, 125 D.P.R. 702, 708 y 709 (1990).
No obstante, cuando el Estado le ha entregado, según sucedió en autos, el control y la jurisdicción de una vía estatal a la Autoridad de Carreteras, no corresponde ya a éste, sino a esta última el deber primario y directo de brindar el mantenimiento usualmente requerido. Miranda v. E.L.A., 94 J.T.S. 152, pág. 525.
En el caso de autos, surge del análisis del informe policial, de los testimonios de Caldas Hernández y de su esposa los diferentes testigos y de las estipulaciones formuladas por las partes, que el accidente se suscitó cuando el hoy occiso, Méndez Soto, intentaba rebasar los vehículos que iban en su misma dirección, utilizando el área del paseo en el que había un hoyo lleno de agua. Concurren las versiones en que fue al caer en dicho hoyo, que perdió éste el control de su propio vehículo, desencadenándose una serie de impactos que culminaron con el recibido por el automóvil del matrimonio Caldas Pagán.
La prueba demostró que todo ello sucedió en un tramo de la carretera que estaba sufriendo mejoras, por parte de la Constructora y bajo la jurisdicción de la Autoridad. El propio perito de esta última, David Eric Cintrón, especialista en la reconstrucción científica de accidentes, explicó en su testimonio que el hoyo se encontraba frente al acceso por donde entraban los camiones al área de construcción, que el mismo medía tres (3) pies de ancho por ocho (8) de largo y que tenía una profundidad de cinco (5) pulgadas. Dijo que éste ocupaba unos cuatro pies del paseo.
Conforme a lo anterior, resulta clara la relación causal entre el hoyo o desperfecto de la carretera y los daños sufridos por los demandantes-apelados. Si bien reconocemos que hubo negligencia del conductor Méndez, al intentar rebasar los otros vehículos de la forma en que lo hizo, también debemos recordar que no es causa adecuada toda condición sin la cual se hubiese producido el resultado, sino aquella que ordinariamente lo produce según la experiencia general. Cárdenas Maxán v. Rodríguez, supra, pág. 710.
En el curso normal de los acontecimientos, no es necesariamente de esperarse que pierda el control de su vehículo una persona que actúa de manera similar a la de Méndez. Sólo un elemento decisivo, como lo fue en autos, el hoyo, puede convertirse en la causa eficiente del daño. Cárdenas Maxán v. Rodríguez, supra.
En cuanto a si era o no previsible, para la Autoridad y la Constructora, el hecho de que se produjera un accidente de tal naturaleza, no nos queda la menor duda de que sí lo era. Estando ubicado el hoyo en el área de entrada y salida de los camiones utilizados para la construcción, era obvio que ambas entidades estaban conscientes de su existencia. Con el testimonio del apelado, Caldas Hernández, y del Ing. Ermelindo Romero Valentín, administrador de proyectos de la Autoridad, quedó igualmente establecido que el paseo era utilizado legalmente en algunas ocasiones, previamente a la construcción, como carril alterno para facilitar el mejor flujo dél tránsito. Ante este panorama, tenía que ser anticipable para la Constmctora y la Autoridad la posibilidad de que algún automóvil invadiera, tarde o temprano, dicho paseo y que cayera entonces en la mencionada depresión, descontrolándose e impactando, entonces, a los demás.
Como entidades a cargo del control del tramo en construcción, la Autoridad y la Constructora tenían que haberse ocupado de que fuera reparado el mencionado hoyo del paseo para evitar que se produjera un accidente como el de autos. Dicha omisión les hizo negligentes y les convirtió, *666 indiscutiblemente, en co-causantes de los daños.
Cabe, por otra parte, destacar que las apelantes no hubieran prevalecido ni siquiera si hubieran alegado, al amparo de la excepción que establece el mencionado Art. 404 del Código Político, supra, que el hoyo había sido causado por la violencia de los elementos y que no hubo tiempo suficiente para remediarlo. Su localización, frente al área de entrada y salida de la construcción, unida al hecho de sus enormes dimensiones, nos lleva a pensar que el mismo se fue formando gradualmente y, como consecuencia directa, según infirió el Tribunal de Primera Instancia, del constante ir y venir de los vehículos de carga y del equipo pesado.
Otro detalle que aporta a la creencia de que el hoyo llevaba más de un día en el lugar, y de que hubo tiempo suficiente y razonable para remediarlo, es que éste presentaba agua en su interior. Conforme al informe policial, no había llovido el día de los hechos.
III
En sus señalamientos de error, la Autoridad y la Constructora critican también el hecho de que el foro de instancia no fijara porcientos de responsabilidad, a fin de establecer nivelación. Esto, a pesar de que sí determinó que hubo responsabilidad solidaria de estas con personas no traídas al pleito.
El Tribunal Supremo ha resuelto que cuando son varios los que con sus actos u omisiones culpables o negligentes causan un daño, se obligan solidariamente a reparar el mismo. Dicha solidaridad tiene como resultado proteger con más eficacia al perjudicado, quien puede requerir de cualquiera de ellos la reparación íntegra del daño. Torres v. E.L.A., 94 J.T.S. 100, pág. 12152.
Habiendo dictaminado en autos, el Tribunal de Primera Instancia, que hubo responsabilidad solidaria entre las apelantes y otras personas no traídas al pleito, es claro que el matrimonio Caldas podrá reclamar de cualquiera de éstos la totalidad de la indemnización; y que no era por ello necesario, ni estaba el foro así obligado, a fijar porcientos de negligencia y responsabilidad individual.
Si pretendían la Autoridad y la Constructora ejercer nivelación, respecto a su relación interna con los otros cocausantes no traídos al pleito, y que el foro fijara para ello el porciento de negligencia de cada cual, debieron, más no lo hicieron, haberlos hecho parte del pleito como terceros demandados. "Permitir que otras personas causantes del daño sean traídas al pleito es algo sumamente saludable puesto que pueden ventilarse en un sólo juicio los derechos de todos los interesados y de determinarse que el daño fue producto de la negligencia concurrente de un demandado y de terceros demandados, entonces surge el derecho, de pagar uno de ellos la totalidad de la sentencia o más de la parte que le corresponde, el derecho de contribución." García v. Gobierno de la Capital, 72 D.P.R. 138, pág. 147(1951).
IV
Entre los errores imputados, también figura el no haber concluido el Tribunal, a pesar de la prueba desfilada, que los daños fueron el resultado de negligencia comparada. Tiene razón en su contención, la parte apelante.
En Puerto Rico, en ausencia de unas pocas excepciones, toda persona que conduzca o viaje como pasajero por la vías públicas en un vehículo de motor, vendrá obligada a utilizar los cinturones de seguridad. Artículo 14 de la Ley de Vehículos y Tránsito de Puerto Rico, Núm. 141 de 20 de julio de 1960, según enmendada, 9 L.P.R.A. see. 1212. Dicha omisión puede, al mismo tiempo, constituir "negligencia" en el contexto de reclamaciones en daños por accidentes de tránsito. Esto, claro está, en la medida en que la parte demandada pueda demostrar, mediante prueba competente, la existencia o no de relación causal entre el no uso del cinturón y el daño sufrido. Canales Velázquez v. Rosario Quiles, 107 D.P.R. 757, 771 (1978).
En el caso de autos, el informe policial, que fue estipulado por las partes, revela que el automóvil de los esposos Caldas tenía cinturones de seguridad y que éstos no los utilizaron, en abierta violación de ley, al momento del accidente. El mismo también reflejó, junto a las alegaciones hechas en la demanda original en la enmendada, que el conductor Caldas Hernández resultó con lesiones graves en la cabeza y con una costilla y pierna fracturadas. Su esposa, por su parte, sufrió traumas en la cara *667 y pérdida de dientes. Dicho tipo de daños, según opinó el ingeniero Cintrón, es característico del llamado "segundo accidente", definido jurisprudencialmente como aquél que ocurre cuando el cuerpo del ocupante viene en contacto con el interior del vehículo luego de recibir el impacto inicial del "primer accidente". Canales Velázquez v. Rosario Quiles, supra, pág. 767 (1978). Cintrón detalló que los daños se producen cuando el vehículo se detiene o reduce su velocidad y la persona sigue, por inercia, dentro del mismo, chocando con el interior.
A la luz de la prueba desfilada y del derecho anteriormente citado, entendemos que hubo negligencia comparada y que fue, por ende, totalmente, errónea la no determinación, por parte del Tribunal de Primera Instancia, de que los demandantes-apelados contribuyeron a producir sus propios daños. Pueblo v. Molina Virola, 96 J.T.S. 133, pág. 225. En virtud de lo anterior, adjudicamos un 75% de la responsabilidad a la Autoridad y a la Constructora y el otro 25% a Caldas Hernández, su esposa y demás demandantes.
Y
En cuanto al error relacionado a la alegada ausencia en la sentencia de los hechos estipulados por las partes, el mismo no merece ninguna discusión. Hemos analizado y comparado detenidamente las determinaciones realizadas por el Tribunal y estipulaciones sometidas por las partes. Concluimos que las mismas son esencialmente similares y que sus diferencias son realmente escasas e irrelevantes. No puede decirse que no respetó, de manera alguna, el Tribunal de Primera Instancia, los acuerdos a los que llegaron las partes.
Por los fundamentos antes expuestos, se modifica la sentencia apelada para imputar a las partes negligencia comparada, así modificada, se confirma. Devuélvase al Tribunal de Primera Instancia para procedimientos ulteriores, cónsonos con este dictamen.
Lo pronunció el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 98 DTA 6
1. Tratándose de una sentencia parcial interlocutoria y no de una final, Cortes Román v. E.L.A., 106 D.P.R. 504, pág. 511, este Tribunal acogió el escrito como si fuera, según corresponde, un certiorari. Ley de la Judicatura de Puerto Rico de 1994, según enmendada, 4 L.P.R.A. sec. 22k, inciso (f).
2. La Autoridad de Carreteras es una entidad gubernamental con personalidad jurídica propia y separada de la del E.L.A., que opera como una empresa privada. Rivera v. Garrido & Co., supra, pág. 11,329. Su ley orgánica le autoriza a entrar en convenios de reparación o mantenimiento con el Departamento de Transportación y Obras Públicas, 9 L.P.R.A. see. 2006, y a "tener completo control y supervisión sobre cualesquiera facilidades de tránsito poseídas, operadas, construidas o adquiridas por ella". 9 L.P.R.A. see. 2004.
3. Refiérase al Apéndice V, págs. 28 a la 30 y apéndice VI, págs. 31 a la 33 de la apelación.