SENTENCIA
En el recurso ante nuestra consideración, el Tribunal de Apelaciones revocó una sentencia del Tribunal de Primera Instancia que declaró al Sr. Alberto De Jesús Mercado (se *468 ñor De Jesús o el recurrido) culpable de los delitos de agresión(1) y alteración a la paz.(2) Como fundamento para su dictamen, el foro intermedio puntualizó que no le otorgó credibilidad al testigo del Ministerio Público y adujo que su testimonio fue estereotipado. De ese proceder recurre el Procurador General, únicamente en lo referente ala revocación del fallo de culpabilidad por el delito de agresión. Por considerar que el tribunal apelativo intermedio abusó de su discreción al sustituir el criterio de apreciación de la prueba del juez sentenciador, revocamos parcialmente la sentencia recurrida.
I
El 27 de enero de 2011 tuvo lugar una manifestación estudiantil en áreas cercanas al Capitolio de Puerto Rico. Ese día, el agente Víctor Ortiz Nevárez (agente Ortiz) —agente de la Policía de Puerto Rico adscrito a la División de Ciclismo del Precinto 166 de Puerta de Tierra, en el Municipio de San Juan— tenía la tarea de patrullar en el área. Su responsabilidad era velar por la seguridad en general, desviar el tránsito en las avenidas que se encontraran obstruidas y notificar a su supervisor sobre cualquier situación anómala que se presentara.(3)
Así las cosas, trascendió que ocurrió un incidente entre el agente Ortiz y el señor De Jesús. Esa situación la investigó el agente Luis Serrano Cabán (agente Serrano Cabán), quien redactó el Informe de Incidente.(4) En ese informe, el agente Serrano Cabán expuso que el 27 de enero de 2011, el agente Ortiz arrestó al señor De Jesús porque este último lo agredió. También consignó que como consecuencia de ello, Ortiz acudió al Centro de Diagnóstico y Trata *469 miento de Santurce, donde el médico de turno le diagnosticó laceraciones y contusiones en diferentes partes del cuerpo.
Ante lo acontecido, el 18 de febrero de 2011, el Ministerio Público presentó dos denuncias en contra del señor De Jesús en las cuales le imputó los delitos de agresión en su modalidad menos grave y alteración a la paz.(5) El juicio en su fondo se celebró el 23 de marzo, 14 de abril y 17 de mayo de 2011. Como parte de la prueba de cargo, el Ministerio Público presentó el testimonio del agente Ortiz. Por su parte, la defensa ofreció los testimonios del agente Serrano Cabán (6) y del Sr. Carlos Pérez Figueroa. También, se presentó como evidencia una grabación hecha en vídeo por este último testigo, el Informe de Incidente y las fotografías que recogían parte de los incidentes de ese día. En conformidad con la transcripción de la prueba oral, pasemos a examinar los testimonios pertinentes a la controversia que nos ocupa, ya que como explicamos, el Estado recurre únicamente de la sentencia revocatoria relacionada con el delito de agresión. Veamos.
Durante el examen directo, el agente Ortiz declaró que el día de los hechos, mientras patrullaba por la calle San Agustín cerca de las 5:50 p. m., vio al señor De Jesús corriendo en una bicicleta.(7) Señaló que previamente se había percatado de la presencia de este en el área, pero que no había intercambiado palabra alguna con él.(8) Continuó relatando que en el momento en que lo divisó en la mencionada calle, el señor De Jesús miró hacia atrás y le profirió palabras obscenas.(9) Atestó que cuando eso ocurrió, ambos se encontraban separados por una distancia de *470 aproximadamente 10 a 20 pies.(10) Afirmó que tras escuchar los insultos le ordenó al recurrido que se detuviera. Según testificó, el señor De Jesús hizo caso omiso a su requerimiento, por lo que aceleró el paso.(11)
En cuanto a lo sucedido posteriormente, el agente Ortiz declaró lo siguiente: “[c]uando él nota que ya estoy cerca de él, se baja por el lado izquierdo de la bicicleta y empuja con sus manos su bicicleta hacia mis pies”.(12) El testigo afirmó que para ese momento ya se había bajado de su bicicleta, acorde con una técnica específica con la cual entrenan a los oficiales del orden público.(13) Empero, añadió que debido al impacto que recibió intentó caminar pero perdió el balance, cayó al pavimento y recibió laceraciones en la rodilla izquierda, en el codo izquierdo y en el tobillo derecho.(14) Luego, describió que en ese instante logró “agarrar” por la camisa al señor De Jesús y que así cayeron ambos al suelo sobre la bicicleta que había empujado este último.(15) A preguntas de la fiscal, el testigo así lo narró:
[Fiscal:] ¿Cómo? Indíquele a la Señora Juez a qué usted se refiere. Por favor, indíquenos.
[Testigo:] Él se bajó por el lado izquierdo de su bicicleta y al bajarse del lado izquierdo, queda la bicicleta de él frente de él. Al yo bajarme de la mía, él empuja la de él hacia mis pies.
[Fiscal:] ¿Y qué sucede?
[Testigo:] Pues, intenté caminar[,] y al bloquearme la bicicleta los pies, perdí el balance.
[Fiscal:] ¿Y qué sucedió?
[Testigo:] Fui a caer al suelo.(16)
Por último, el agente Ortiz declaró que a la escena llegó el agente Gregorie Robledo, quien lo ayudó a neutralizar al *471 señor De Jesús, y que en ese instante arribaron cerca de cuarenta estudiantes a lanzarle piedras.(17)
En el contrainterrogatorio, la defensa confrontó al agente Ortiz con la versión que había ofrecido en una declaración jurada que prestó para el caso. En la misma, el agente Ortiz declaró que el señor De Jesús “se desmont[ó] por el lado izquierdo de su bicicleta y a la vez empuj [ó] con sus manos su bicicleta roja hacia [sus] pies”.(18) En lo pertinente, la defensa formuló las siguientes preguntas:
[Defensa:] “Porque su bicicleta impactó mis pies”. Vamos a ver si entendemos eso. Usted nos ha dicho que él se baja de su bicicleta por el lado izquierdo. Que él se baja cuando usted está acercándose a él.
[Agente:] Correcto.
[Defensa:] ¿Usted aceleró, verdad? Ha dicho que usted aceleró cuando alegadamente le profirió las palabras.
[Agente Ortiz:] Es correcto.
[Defensa:] ¿Y cuando usted se va acercando, que está cerca, él se baja de la bicicleta por su lado izquierdo?
[Agente Ortiz:] Correcto.
[Defensa:] Usted intenta caminar. ¿Pero cómo? Usted está en la bicicleta.
[Agente Ortiz:] Le expliqué que [...]
[Defensa:] Usted no se ha bajado de la bicicleta. Usted intentó caminar cómo. ¿Intenta caminar usted a la vez que va pedaleando la bicicleta o cómo es eso?
[Agente Ortiz:] Nosotros cogemos adiestramiento que nos enseña cómo bajarnos de la bicicleta. Se llama el crossover disbound. Yo levanto el pie derecho mío y me quedo en el pedal del lado izquierdo.
[Agente Ortiz:] Pongo un pie en el piso, suelto mi bici y sigo caminando.(19)
En el interrogatorio, la defensa indagó, también, sobre los movimientos del agente antes de la agresión.
*472 [Defensa:] Entonces, él se baja por su parte izquierda. Está de frente a usted.
[Agente Ortiz:] Correcto.
[Defensa:] Usted viene en la bicicleta y usted trata de caminar. [Agente Ortiz:] No. Yo caminé.
[Defensa:] ¿Caminó?
[Agente Ortiz:] Yo me baje de mi bicicleta y solté mi bicicleta.
[Defensa:] Perdón, perdón.
[Agente Ortiz:] Solté mi bicicleta y seguí caminando. Justamente cuando estaba cerca de él, él suelta su bicicleta y la empuja con sus manos.
[Defensa:] Ahora me va a buscar en esa Declaración Jurada que usted prestó para los hechos de este caso, dónde usted dice que usted soltó su bicicleta. ¿Verdad que no lo dice?
[Agente Ortiz:] No lo dice.
[Defensa:] ¿Y verdad que tampoco en esa Declaración Jurada dice que usted soltó su bicicleta y caminó hacia él?
[Agente Ortiz:] No lo dice.
[Defensa:] Lo está diciendo hoy por primera vez. ¿Y yo le pregunto, usted caminó o no llegó a caminar?
[Agente Ortiz:] Caminé.
[Defensa:] Caminó. ¿Y usted lo que ha dicho en la mañana de hoy, a preguntas de la compañera, es que usted trató de caminar y no pudo?
[Agente Ortiz:] Di los pasos suficientes cuando me bajé de mi bicicleta.
[Agente Ortiz:] Cuando di el paso, que él lanza la bicicleta ya no pude caminar.
[Agente Ortiz:] Yo iba con el viaje. Cuando me bajo de la bicicleta doy 1 ó 2 pasos, que es normal. Ahí cuando me da el impacto la bicicleta, no [pude] caminar más na’. Caí al piso.(20)
Posteriormente, al explicar nuevamente ese suceso, el agente indicó: “Pues, vuelvo y repito. Cuando me bajé de mi bicicleta, que voy en movimiento, lógicamente, doy un paso pa’ bajarme de mi bicicleta y ahí me impacta la bicicleta de él”.(21) En esencia, ese fue el testimonio que ofreció el testigo de cargo.
La prueba de la defensa puede resumirse como se reseña a continuación:
*473 El agente Serrano Cabán, oficial que preparó el Informe de Incidente como parte del procedimiento, señaló que según los datos recopilados, la causa para el arresto del señor De Jesús fue la alegada agresión. Afirmó que no presenció los hechos por los cuales se configuró el arresto.(22) También testificó el Sr. Carlos Alberto Pérez Figueroa, fotoperiodista independiente y documentalista que produjo la grabación en vídeo que fue admitida como evidencia. El testigo admitió que el filme no recoge el incidente que motivó el arresto y declaró que tampoco presenció los hechos de la agresión.(23) Consecuentemente, narró que vio cuando arrestaron al recurrido pero que no observó lo que ocurrió antes de ese incidente.
Luego de escuchar y aquilatar la totalidad de la prueba, el 14 de abril de 2011, el Tribunal de Primera Instancia (TPI) dictó una sentencia mediante la cual declaró al señor De Jesús culpable de cometer los delitos de agresión y alteración a la paz. En consecuencia, le impuso una pena agregada de 117 días multa a razón de $44.00 por día, y la pena especial por cada una de las convicciones.(24)
Inconforme con esa determinación, el señor De Jesús acudió al Tribunal de Apelaciones(25) y alegó, en síntesis, que el testimonio del agente Ortiz estuvo plagado de con *474 tradicciones, omisiones y lagunas en cuanto a detalles fundamentales de los hechos. Argüyó que no proveyó una declaración coherente en cuanto a la agresión que sufrió por parte del señor De Jesús. Por último, puntualizó que el foro primario no consideró prueba presuntamente exculpatoria, refiriéndose a la grabación en vídeo y a las fotografías que se admitieron en evidencia.
Examinado el recurso, el 14 de noviembre de 2011, el foro apelativo revocó los fallos de culpabilidad en contra del señor De Jesús. En lo concerniente al delito de agresión, ese foro judicial se limitó a señalar lo siguiente:
Entendemos que de la prueba presentada no se desprenden los elementos del delito de agresión. Si bien es cierto que el Agente Ortiz declaró haber sufrido unas lesiones corporales a causa de las acciones del señor De Jesús, no olvidemos que el testimonio vertido por este fue uno estereotipado, al cual le otorgamos muy poca credibilidad. De las fotos ni del video, admitidos en evidencia, surge que el señor De Jesús hubiese agredido al Agente Ortiz. Por el contrario, en las referidas fotos pudimos apreciar que fue el agente policíaco quien lanzó al suelo al acusado. Apéndice de la Petición de certiorari, págs. 12-13.
Inconforme, el Procurador General comparece mediante recurso de certiorari y señala como únicos errores los siguientes:

Erró el Honorable Tribunal de Apelaciones al revocar la sentencia emitida por el Tribunal de Primera Instancia —que declaraba culpable al señor Alberto de Jesús Mercado por infracción al Artículo 121 del Código Penal cuando la prueba sostiene que efectivamente este atacó al agente Ortiz Nevárez causándole lesiones a la integridad corporal y/o laceraciones, sustituyendo de esta manera el criterio del Tribunal de Primera Instancia en la apreciación de la prueba.

Erró el Honorable Tribunal de Apelaciones al intervenir con la apreciación de la prueba testifical que hizo el juzgador de los hechos en ausencia de pasión, prejuicio, parcialidad o error manifiesto y al revocar la determinación del Tribunal de Primera Instancia a pesar de que la prueba era suficiente y satisfactoria en derecho para declarar al señor Alberto de Jesús *475 Mercado culpable del delito de agresión. (Énfasis suplido). Petición de certiorari, pág. 5.(26)
Previa solicitud, admitimos la Petición de certiorari como el alegato de la parte peticionaria.(27) El recurrido ha comparecido y en síntesis plantea los mismos argumentos que presentó ante el foro judicial intermedio.
Así, pues, contando con el beneficio de la comparecencia de ambas partes, pasamos a resolver la controversiá de autos. Para ello, es imperativo discutir principios básicos que rigen nuestro ordenamiento jurídico penal.
II
A. Como imperativo constitucional, la Sec. 11 del Art. II de la Carta de Derechos de la Constitución de Puerto Rico preceptúa que en todos los procesos criminales el acusado disfrutará del derecho a gozar de la presunción de inocencia. Art. 2, Sec. 11, Const. ELA, LPRA, Tomo 1, ed. 2008, pág. 343. Esa norma también se incorporó estatutariamente en la Regla 304 de Evidencia que dispone que se presume que toda persona es inocente de delito o falta hasta que se demuestre lo contrario. 32 LPRA Ap. VI. Véase Pueblo v. García Colón I, 182 DPR 129 (2011). El ordenamiento penal le exige al Estado que para rebatir la presunción de inocencia presente prueba satisfactoria y suficiente en derecho, es decir, que produzca certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido. Id., pág. 175. La determinación de que cierta prueba es suficiente para evidenciar más allá de duda razonable la culpabilidad del acusado, es una cuestión de raciocinio, producto de todos los elementos de juicio *476 del caso y no una mera duda especulativa o imaginaria. Id. Véase, también, Pueblo v. Irizarry, 156 DPR 780 (2002). En cuanto a ese estándar de “duda razonable” hemos expresado que:
El Ministerio Fiscal no cumple con ese requisito presentando prueba que meramente sea “suficiente”, esto es, que “verse” sobre todos los elementos del delito imputado; se le requiere que la misma sea “suficiente en derecho”. Ello significa que la evidencia presentada, “además de suficiente, tiene que ser satisfactoria, es decir, que produzca certeza o convicción moral en una conciencia exenta de preocupación” o en un ánimo no prevenido [...] Esa “insatisfacción” con la prueba es lo que se conoce como “duda razonable y fundada”. (Énfasis suprimido). Pueblo v. Cabán Torres, 117 DPR 645, 652 (1986).
De este modo, la prueba que se presente debe dirigirse a demostrar la existencia de cada uno de los elementos del delito, la conexión de estos con el acusado y la intención o negligencia de este. Pueblo v. Santiago et al., 176 DPR 133, 142 (2009). La evaluación de la prueba de casos criminales se debe analizar cuidadosamente para que no se viole el derecho constitucional de un acusado a que su culpabilidad se establezca más allá de duda razonable. Pueblo v. Acevedo Estrada, 150 DPR 84 (2000).
B. Por su parte, la Regla 110 de Evidencia nos instruye en cuanto a la evaluación y suficiencia de la prueba. 32 LPRAAp. VI. De su texto surge que será el juzgador de hechos quien “deberá evaluar la evidencia presentada con el propósito de determinar cuáles hechos han quedado establecidos o demostrados [...]”. Id. De acuerdo con ese precepto, eso se hará con sujeción a varios parámetros que allí se enumeran. Entre ellos, el inciso (d) señala que “[l]a evidencia directa de una persona testigo que merezca entero crédito es prueba suficiente de cualquier hecho, salvo que otra cosa se disponga por ley”. Examinemos el marco doctrinal.
En Pueblo v. Chévere Heredia, 139 DPR 1, 15-16 (1995), reiteramos que el testimonio de un testigo principal, por sí solo, de ser creído, es suficiente en derecho para sostener *477 un fallo condenatorio, aun cuando no haya sido un testimonio “perfecto”, pues “[e]s al juzgador de los hechos a quien le corresponde resolver la credibilidad de un testigo cuando haya partes de su testimonio que no sean aceptables [...]”. Esto es así porque en Puerto Rico la máxima falsus in uno, falsus in omnibus no autoriza a rechazar toda la declaración de un testigo porque se haya contradicho o faltara a la verdad respecto a uno o más aspectos de su declaración. Quintana Tirado v. Longoria, 112 DPR 276, 292 esc. 9 (1982). En ese sentido, la misión de los tribunales requiere armonizar y analizar en conjunto e integralmente toda la prueba, para así arribar a una conclusión correcta y razonable del peso que se ha de conceder al testimonio en su totalidad. Id. Por esa razón, el hecho de que un testigo incurra en ciertas contradicciones no significa que se deba descartar absolutamente el resto de la declaración cuando nada increíble o improbable surge de su testimonio. Pueblo v. Chévere Heredia, supra, pág. 15.
En el precitado caso nos enfrentamos a una situación en la que dirimimos sobre el efecto que tendrían ciertas contrariedades en las que incurrió una testigo, y al justipreciar el asunto, esbozamos que
[...] con excepción de mínimas contradicciones insustanciales, nada hay en el testimonio de la niña que sea increíble o inverosímil a tal extremo que haya que descartarlo completamente. Tampoco hay muestra de que el tribunal sentenciador haya errado al creerlo ni que hubiese mediado prejuicio o parcialidad en su apreciación de dicho testimonio. No procede, pues, que intervengamos con la sentencia apelada en este particular. (Enfasis nuestro). Id., pág. 20.
Por lo tanto, para que la declaración de un testigo sea creíble, esta no puede ser físicamente increíble, inverosímil o que por las contradicciones o la conducta del testigo en la silla testifical se haga indigna de crédito. Pueblo v. Pagán Díaz, 111 DPR 608 (1981).
Reiteradamente hemos intimado que nuestro esquema probatorio está revestido por un manto de deferencia hacia las determinaciones que realizan los juzgadores de pri *478 mera instancia en cuanto a la prueba testifical que se presenta ante ellos. Como regla general, un tribunal apelativo no debe intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad que haya efectuado el juzgador de los hechos, ni tiene facultad para sustituir las determinaciones del foro primario por sus propias apreciaciones. Pueblo v. García Colón I, supra. Este Tribunal ha reafirmado que las determinaciones de hechos del Tribunal de Primera Instancia a las que sustente prueba oral merecen gran deferencia de los tribunales apelativos. Id. Ese axioma está basado en consideraciones lógicas, ya que el magistrado del foro primario es quien ha tenido la oportunidad de contactar directamente ese tipo dé prueba. Más detalladamente, en el citado precedente judicial, acotamos que
[...] es “[e]l juez sentenciador, ante quien deponen los testigos, quien tiene la oportunidad de verlos y observar su manera de declarar, de poder apreciar sus gestos, titubeos, contradicciones, manerismos, dudas, vacilaciones y, por consiguiente, de ir formando gradualmente en su conciencia la convicción en cuanto a si dicen la verdad”. Id., pág. 165.
Ya desde antaño nos pronunciamos de esta forma:
[...] “y es que no sólo habla la voz viva. También hablan las expresiones mímicas: el color de las mejillas, los ojos, el temblor o consistencia de la voz, los movimientos, el vocabulario no habitual del testigo, son otras tantas circunstancias que deben acompañar el conjunto de una declaración testifical y sin embargo, todos estos elementos se pierden en la letra muda de las actas, por lo que se priva al Juez de otras tantas circunstancias que han de valer incluso más que el texto de la declaración misma para el juicio valorativo que ha de emitir en el momento de fallar; le faltará el instrumento más útil para la investigación de la verdad: la observación”. (Énfasis nuestro). Ortiz v. Cruz Pabón, 103 DPR 939, 947 (1975).(28)
Así, por ejemplo, en López Vicil v. ITT Intermedia, Inc., 142 DPR 857 (1997), el foro de primera instancia se en *479 frentó a cierta prueba conflictiva respecto a una reclamación por despido injustificado. Tras aquilatarla, el tribunal acogió la versión que ofreció la parte demandante. La parte demandada acudió al foro apelativo y este, a su vez, revocó las conclusiones de hecho del juez sentenciador. Ante esta Curia compareció la parte demandante, y al tener la controversia ante nuestra consideración expresamos que
[f]rente a estas determinaciones tajantes y ponderadas del foro de instancia, ¿podía el foro apelativo descartarlas y sustituirlas por sus propias apreciaciones, fundamentadas en un examen del expediente del caso? La respuesta es claramente que no: el foro apelativo erró al actuar como lo hizo. (Énfasis nuestro). íd., pág. 864.
En síntesis, procede que un foro apelativo otorgue completa deferencia a la apreciación que el juzgador de primera instancia hizo sobre la prueba, esto, ya que es quien estuvo en mejor posición de aquilatarla. Esta regla cobra mayor significado en casos en que detalles perceptibles re-sultan esenciales para graduar adecuadamente la sinceridad de los testimonios. Pueblo v. Rivera Robles, 121 DPR 858, 869 (1988). Y valga recalcar, que tal deferencia se otorga “[m\ás aún, cuando el planteamiento de insuficiencia de prueba se reduce a uno de credibilidad de los testigos”. (Énfasis nuestro). Pueblo v. Torres Rivera, 137 DPR 630, 640-641 (1994).
Ahora bien, la normativa enunciada no es absoluta ni opera de manera omnímoda. Véase Serrano Muñoz v. Auxilio Mutuo, 171 DPR 717 (2007). Si bien es ineludible conferir esa deferencia que ya hemos descrito, podemos preterir la credibilidad que el juzgador le confirió a la prueba testifical que se presentó ante sí en caso de que se haya incurrido en parcialidad, error manifiesto o prejuicio. Id.
El diccionario de la Real Academia Española define parcialidad como el “[d]esignio anticipado o prevención en favor o en contra de alguien o algo, que da como resultado la falta de neutralidad o insegura rectitud en el modo de juz *480 gar o de proceder”.(29) Por su parte, para que un error sea manifiesto, este debe ser “[descubierto, patente, y claro”.(30) Es por eso que los supuestos antes mencionados se han catalogado como un abuso de discreción. S.L.G. Flores Jiménez v. Colberg, 173 DPR 843 (2008). En ese sentido, nuestra jurisprudencia también ha definido conductas que denotan cuándo un tribunal se ha extralimitado en el ejercicio de sus facultades. Así, hemos dicho que el abuso de discreción se puede manifestar de varias maneras, tales como
[...] cuando el juez, en la decisión que emite, no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando por el contrario el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en el mismo; o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez livianamente sopesa y calibra los mismos. Pueblo v. Ortega Santiago, 125 DPR 203, 211-212 (1990).
Así, pues, en casos en que el tribunal de instancia incurra en pasión, prejuicio, error manifiesto, y, por ende, en abuso de discreción, a pesar de que el juzgador haya observado al testigo, las situaciones reseñadas impiden que se le conceda la deferencia que como regla general se le confiere. Esto se hace necesario para no incurrir en una injusticia. Es decir, un tribunal revisor sólo podrá intervenir con las conclusiones de hecho de un foro primario cuando la apreciación total de la prueba no represente su balance más racional, justiciero y jurídico. Miranda Cruz y otros v. S.L.G. Ritch, 176 DPR 951 (2009); Cárdenas Maxán v. Rodríguez Rodríguez, 125 DPR 702, 714 (1990). Pues, aunque ya hemos dicho en repetidas ocasiones que los juzgadores de hechos merecen respeto y confiabilidad en la apreciación imparcial de la prueba,
*481 [c]on ello no podemos significar que los juzgadores de hechos no se equivoquen. De ahí que en muchos casos no hemos vacilado en dejar sin efecto un fallo condenatorio cuando un análisis de la prueba que tuvo ante sí el tribunal sentenciador nos deja serias dudas, razonables y fundadas, sobre la culpabilidad del acusado. Pueblo v. Carrasquillo Carrasquillo, 102 DPR 545, 551 (1974).
En referencia a los casos de naturaleza criminal, en Pueblo v. Santiago et al., supra, págs. 147-148, añadimos que al revisar una determinación atinente a una convicción criminal, la apreciación de la prueba corresponde al foro sentenciador, a no ser que se deba revocar porque (1) hubo prejuicio, parcialidad o pasión, o (2) que la prueba no concuerda con la realidad fáctica, es increíble o imposible. De no estar presentes esos elementos, la determinación de culpabilidad hecha por el juzgador de hechos “merece gran deferencia”. Id.
C. En el caso de autos, el tribunal intermedio precisó que no le otorgó credibilidad al testimonio del agente Ortiz por cuanto clasificó sus declaraciones como estereotipadas. El testimonio estereotipado es aquel que, debido a sus particularidades, también puede quedar sujeto al rechazo judicial. Sin vacilación, hemos apuntado que un testimonio de ese tipo, cuando es inherentemente irreal o improbable, se debe descartar. Pueblo v. Camilo Meléndez, 148 DPR 539, 559 (1999). Véase, también, Pueblo v. Rivera Rodríguez, 123 DPR 467, 480 (1989). Pasemos a discutir cuáles son las características propias de un testimonio de esa naturaleza.
En nuestra jurisdicción, “el uso de declaraciones estereotipadas por cualquier tipo de testigo, en este caso agentes del orden público, debe ser objeto de escrutinio riguroso para evitar que declaraciones falsas o inexactas, vulneren derechos de ciudadanos inocentes”. Pueblo v. Camilo Meléndez, supra, pág. 558. Por definición, el testimonio estereotipado es “aquel que se ciñe a establecer los elementos mínimos necesarios para sostener un delito sin incluir detalles imprescindibles para reforzarlos’ ”. Pueblo v. Acevedo *482 Estrada, supra, pág. 93. Véase Pueblo v. Camilo Meléndez, supra. La jurisprudencia puertorriqueña ha hilvanado ciertos parámetros que servirán como guía para evaluar la credibilidad de un testimonio de este tipo. Pasemos a mencionarlos.
Reiteradamente, hemos sostenido que el testimonio estereotipado se debe examinar con especial rigor. Pueblo v. Camilo Meléndez, supra. En ese sentido, tanto los casos de evidencia abandonada como los casos de actos a plena vista deben, en ausencia de otras consideraciones, inducir sospecha de la posible existencia de testimonio estereotipado. Id. Pero, tampoco puede hablarse de testimonio estereotipado meramente por tratarse de una transacción a plena luz del día. Pueblo v. Torres García, 137 DPR 56, 67 (1994). Ahora bien, esta clase de testimonio puede perder su condición de tal si, yendo más allá de los datos indispensables para pro-bar los requisitos mínimos de un delito, se le rodea de las circunstancias en que funciona el agente, el término de su investigación, los resultados obtenidos fuera del caso en trámites y otros detalles. Pueblo v. Camilo Meléndez, supra, pág. 559.
Es importante señalar que la presencia de contradicciones o vaguedades en el testimonio debe reforzar el recelo con el que hay que escuchar esta clase de declaraciones. Pueblo v. Camilo Meléndez, supra, pág. 559. Ahora bien, el hecho de que un testimonio reúna cualidades distintivas de una prueba estereotipada y se deba escudriñar con especial rigor, no significa que deba descartarse siempre. Sólo debe rechazarse cuando ante el juzgador de los hechos resulte, o se deba considerar, como inherentemente irreal o improbable. Id. Así, resultaría “inquietante que de un plumazo [se caracterice] de ‘testimonio estereotipado' e ‘increíble' ” la versión de uno de los testigos “como única forma de poder revocar”, aun cuando el Tribunal de Primera Instancia ha rechazado esa contención. Pueblo v. Rivera Colón, 128 DPR 672, 703 (1991), opinión disidente del Juez Asociado Señor Negrón García.
*483 Expuesto el marco doctrinal que precede, justipreciemos los señalamientos del Ministerio Público.
III
Los errores que nos presenta el Procurador General básicamente se dirigen a cuestionar el proceder del foro intermedio revisor en cuanto a dos aspectos esenciales de nuestro sistema probatorio. Primero, nos señala que el tribunal intermedio incidió al interferir con una labor que le corresponde de manera principalísima al foro juzgador: otorgar credibilidad a la prueba testifical. En segundo lugar, alude a que la prueba que presentó fue suficiente en derecho para rebatir la presunción de inocencia que le amparaba al recurrido. Por encontrarse íntimamente relacionados, discutiremos ambos señalamientos en conjunto.
Como indicáramos, las reglas que rigen el derecho probatorio permiten que una parte pruebe su caso mediante la presentación de un solo testigo. Claro está, ese supuesto se encuentra supeditado a que el mismo goce de la credibilidad necesaria, a fin de que el magistrado que sopese su testimonio concluya que los eventos ocurrieron tal como dicho testigo lo sostuvo. La normativa jurisprudencial nos ilustra que para que el testimonio de un testigo sea creíble, no puede ser físicamente imposible o que por su comportamiento en la silla testifical deba descartarse. Además, dentro de la esfera de lo que constituye un testimonio estereotipado, también habría que evaluar si el testimonio particular se circunscribe a dar declaraciones repetitivas en cuanto a elementos básicos del delito, sin ofrecer descripciones adicionales sobre los eventos que rodearon el incidente que motivó la acusación. Y aún de ser estereotipado, no implica que se deba rechazar automáticamente.
Todos los elementos señalados sirven para evaluar la credibilidad del testimonio del agente Ortiz, esto, junto a un análisis en cuanto a si el testimonio, de haber sido creíble, es suficiente para probar más allá de duda razonable que el señor De Jesús cometió el delito de agresión. Esto *484 es, justipreciar si la prueba de cargo fue suficiente en derecho para probar los elementos del Art. 121 del Código Penal de Puerto Rico de 2004 (33 LPRA see. 4749). Es en este punto que convergen los asuntos de suficiencia de la prueba y deferencia al foro revisor que nos plantea la parte peticionaria. Es evidente que por nuestra condición de ser un foro revisor, no podemos observar los ademanes, gestos, el tono de voz y todas aquellas manifestaciones perceptibles a los sentidos que sí pudo observar el juzgador de los hechos de instancia cuando el agente Ortiz prestaba sus declaraciones. Por lo tanto, examinaremos si dentro de los contornos de lo que debemos auscultar, la determinación de credibilidad que hizo el foro de instancia rebasó los límites de la sana discreción judicial y si, tal como lo concluyó el foro apelativo, la prueba del Estado se debió descartar por estereotipada.
En primer lugar, tanto en el foro apelativo como ante esta Curia, el señor De Jesús no señaló actuación alguna por parte del TPI que constituyera pasión, error manifiesto o algún prejuicio injusto. En consecuencia, ante la ausencia de ello, procede conferirle deferencia a la credibilidad que le otorgó el foro sentenciador al testimonio del agente Ortiz. En ese contexto, corresponde que examinemos si el mismo resultó increíble, físicamente imposible y, por consiguiente, insuficiente para probar el delito de agresión.
El Art. 121 del Código Penal de 2004, supra, tipifica el delito de agresión estableciendo que “[t]oda persona que ilegalmente por cualquier medio o forma cause a otra una lesión a su integridad corporal incurrirá en delito menos grave”. Una lectura de la precitada disposición refleja quepara que se configure ese delito es necesario que concurran, y se prueben, los siguientes elementos: (1) que el imputado mediante cualquier medio o forma (2) causó una lesión a la integridad corporal de otra persona y (3) que dicha actuación se perpetró de manera ilegal. En otras palabras, sin que existiese justificación legal alguna para que el imputado incurriera en la mencionada conducta. Hemos examinado con rigor la transcripción de la prueba oral ver *485 tida en el juicio y el texto del precitado estatuto. De ese ejercicio podemos concluir, razonablemente, que la prueba del Ministerio Público fue suficiente para probar más allá de duda razonable que el señor De Jesús incurrió en conducta delictiva constitutiva de agredir al agente Ortiz. Por su parte, el recurrido hace especial hincapié en ciertas manifestaciones del testigo que, según él, constituyen contradicciones fundamentales en cuanto a los hechos del caso, empero, un análisis integral del testimonio del agente Ortiz nos lleva a colegir lo contrario. Veamos.
Si bien es cierto que el agente Ortiz ofreció detalles diferentes en algunas porciones de su testimonio —por ejemplo, declaró que no llegó a caminar cuando se bajó de su bicicleta y luego aclaró que caminó los pasos suficientes; indicó que el señor De Jesús se bajó de su bicicleta y simultáneamente la empujó, y luego indicó que se desmotó primero de la bicicleta y que luego la empujó— cabe destacar que esas diferencias son mínimas y no inciden sobre elementos esenciales que conviertan su testimonio en imposible o físicamente increíble. Al examinar la transcripción de la prueba oral queda meridianamente claro que el agente Ortiz testificó sobre los elementos necesarios para que el Ministerio Público pudiera probar más allá de duda razonable que el señor De Jesús cometió el delito de agresión. El agente perjudicado fue enfático al manifestar que tras intentar detener al señor De Jesús, este último, sin justificación alguna para ello, le lanzó la bicicleta hacia sus pies. Ese impacto provocó que el agente cayera al suelo y sufriera las lesiones por las cuales acudió al Centro de Diagnóstico y Tratamiento para recibir asistencia médica. En su comparecencia, el recurrido se limita a atacar la credibilidad de este testigo bajo los fundamentos que ya hemos discutido. En cuanto a eso, de acuerdo con la norma jurisprudencial aplicable, debemos puntualizar que era precisamente al foro sentenciador a quien le correspondía dirimir esas discrepancias y así lo hizo. Recordemos que “ ‘cuando un testigo se contradice, lo que se pone en juego es su credibilidad’ y es ‘al jurado o al juez de instancia a *486 quien corresponde resolver el valor de su restante testimonio’ Pueblo v. Cabán Torres, supra, págs. 656-657. Por lo tanto, en ausencia de pasión, prejuicio o parcialidad en su dictamen de culpabilidad, no debemos intervenir con el criterio del Tribunal de Primera Instancia.
Por otro lado, la disidencia supedita la credibilidad del agente Ortiz Nevárez al contenido del informe de incidente que se presentó como evidencia. Acota que ese documento se limita a señalar únicamente que el agente fue agredido pero sin especificar la manera en que ocurrió ese evento. En este punto es importante aclarar que ese informe no fue la única prueba que tuvo ante sí el Tribunal de Primera Instancia, pues también pudo sopesar el testimonio del propio peijudicado. Además, no existe norma jurisprudencial alguna que nos obligue a descartar la credibilidad conferida por el juzgador a las manifestaciones verbales que un testigo hizo en el juicio por el mero hecho de que el informe de incidente preparado por un oficial del orden público no contenga todos y cada uno de los detalles que dicho testigo manifestó en la sala del tribunal. Esa exigencia desvirtuaría nuestro sistema de derecho probatorio tal y como está contemplado en las Reglas de Evidencia. Así también, la disidencia le resta mérito a la credibilidad que el Tribunal de Primera Instancia le otorgó al agente perjudicado ya que en la cinta de vídeo que se admitió en evidencia aparecen las expresiones de una ciudadana, las cuales “concuerdan con lo declarado por el señor De Jesús Mercado [...]”.(31) En cuanto a esto es necesario señalar que las Reglas de Evidencia estipulan que “[1]a juzgadora o el juzgador de hechos no tiene la obligación de decidir de acuerdo con las declaraciones de cualquier cantidad de testigos que no le convenzan contra un número menor u otra evidencia que le resulte más convincente”. Regla 110(e) de Evidencia, 32 LPRA Ap. VI. Además, la referida ciudadana no se sentó en la silla de los testigos, por lo que el juzgador *487 de hechos no tuvo la oportunidad de evaluar la veracidad de sus declaraciones en el juicio.
De otra parte, en la Sentencia del Tribunal de Apelaciones se indicó que no se le daría credibilidad al testimonio del agente por ser estereotipado. Al emitir su curso decisorio, ese foro no explica las razones por las cuales colige que el testimonio del agente Ortiz resultó ser estereotipado en cuanto a cómo ocurrió la agresión. En cambio, se limitó a señalar lo siguiente:
Si bien es cierto que el Agente Ortiz declaró haber sufrido mías lesiones corporales a causa de las acciones del señor De Jesús, no olvidemos que el testimonio vertido por este fue uno estereotipado, al cual le otorgamos muy poca credibilidad. Apéndice de la Petición de certiorari, págs. 12-13.
En otra parte de la Sentencia adujo lo siguiente:
Es nuestra opinión, que el Agente Ortiz prestó un testimonio estereotipado a los fines de justificar un arresto sin orden contra el señor De Jesús. Este se limitó a esbozar los elementos mínimos del delito sin entrar en detalles en específico.(32)
Estos son todos los fundamentos contenidos en la sentencia recurrida para sostener la conclusión de que el testigo del Ministerio Público brindó un testimonio estereotipado. Es motivo de preocupación que sin explicación alguna se catalogara el testimonio del agente Ortiz de esa manera. Ante ello, retomamos las expresiones del Juez Asociado Señor Negrón García en Pueblo v. Rivera Colón, supra, pág. 703, cuando puntualizó que resultaba “inquietante que de un plumazo [se caracterizara] de ‘testimonio estereotipado’ e ‘increíble’ la versión de uno de los testigos “como única forma de poder revocar [...]”. En nuestra función revisora hemos examinado cuidadosamente la transcripción del testimonio del agente Ortiz, y colegimos que no se limitó a recitar o repetir únicamente los elementos mínimos del delito de agresión. Tanto en el examen directo como en el contrainterrogatorio, el testigo abundó amplia *488 mente sobre los hechos ocurridos antes, durante y después del incidente. Salvo mínimas e insignificantes contradicciones, fue consistente en describir la forma en que el recurrido lo agredió con una bicicleta. Como resultado, es forzoso concluir que el testimonio del agente perjudicado no fue estereotipado. Además, recordemos que de haber sido ese el caso, aun así el TPI no estaba obligado a descartarlo, puesto que lo que debía hacer era mirarlo con recelo y sospecha.
Por último, el Tribunal de Apelaciones fundamentó su decisión revocatoria en que de las fotos ni de la grabación en vídeo se deducía que el recurrido hubiese agredido al agente Ortiz. Ese proceder no exige otro análisis más allá de detallar que el propio testigo que grabó la cinta afirmó ante la juez de instancia que no observó personalmente el incidente de la agresión. Más aún, se limitó a describir que vio y grabó cuando el agente Ortiz seguía al señor De Jesús, pero que detuvo la grabación por cuestiones técnicas de su cámara. Así también, relató que cuando continuó grabando, ya el recurrido se encontraba bajo arresto. No grabó el momento de la agresión. Tan es así que afirmó que el único testigo que podía decir lo que había pasado antes del arresto era el propio agente Ortiz, testigo a quien el TPI le confirió absoluta credibilidad. De igual forma, de las fotografías no surge evidencia que resulte ser de naturaleza exculpatoria.
Para finalizar, luego de estudiar el expediente en su totalidad y la transcripción de los testimonios ofrecidos en el juicio, no observamos indicio de que el juzgador de los hechos haya actuado con prejuicio, pasión o parcialidad, o que existiera algún error manifiesto. Pues así como lo hiciéramos en un caso de antaño, hoy también
[h]emos examinado los elementos probatorios aportados al juicio, y encontramos que ciertamente hay contradicción entre las declaraciones de los testigos de El Pueblo de Puerto Rico y los de la defensa, pero la corte inferior que estaba en mejores condiciones que nosotros para dirimir ese conflicto, lo resolvió en contra del acusado, y como no se nos ha demostrado que *489 obrara influida por pasión, prejuicio o parcialidad, o con manifiesto error, tenemos que aceptar como verdad legal su fallo de convicción, el que se sostiene por las declaraciones de varios testigos, sin que pueda por tanto afirmarse que sea contrario a las pruebas.(33)
Así, pues, teniendo aun plena vigencia los precitados pronunciamientos, y según el análisis de los hechos y del derecho aplicable, concluimos que no estamos ante un problema de suficiencia de la prueba, como tampoco ante un testimonio que se pudiera considerar estereotipado. Por ello, es forzoso colegir que el foro recurrido incidió en los errores señalados.
IV
Por los fundamentos que anteceden, revocamos la sentencia del Tribunal de Apelaciones en cuanto a aquella parte que revirtió el fallo de culpabilidad por el delito de agresión. En consecuencia, restituimos la sentencia del Tribunal de Primera Instancia en cuanto encontró culpable al señor De Jesús por el delito de agresión en su modalidad menos grave.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal Supremo. El Juez Asociado Señor Estrella Martínez emitió una opinión disidente, a la cual se unieron el Juez Presidente Señor Hernández Denton y la Juez Asociada Señora Rodríguez Rodríguez. La Jueza Asociada Señora Fiol Matta emitió la expresión siguiente: “La Jueza Asociada Señora Fiol Matta disiente porque no se presentó prueba que sostenga la determinación de culpabilidad contra el Sr. Alberto de Jesús Mercado por el delito de agresión”.
(Fdo.) Aida Ileana Oquendo Graulau

Secretaria del Tribunal Supremo

 Art. 121 del Código Penal de Puerto Rico de 2004 (33 LPRA see. 4749).

 Art. 247 del Código Penal de Puerto Rico de 2004 (33 LPRA see. 4875).

 Véase Transcripción de juicio en su fondo, págs. 23-24 y 26, Apéndice de la Petición de certiorari, págs. 39-40 y 42.

 Véase Informe de Incidente, Apéndice del Alegato del recurrido, pág. 50.

 Apéndice de la Petición de certiorari, págs. 259-260.

 Durante el juicio, el Ministerio Público manifestó que no utilizaría al testigo Luis Serrano Cabán, por lo que lo puso a disposición de la defensa. Véase Transcripción de juicio en su fondo, págs. 100-101, Apéndice de la Petición de certiorari, págs. 116-117.

 íd., pág. 45.

 íd., pág. 82.

 íd., págs. 46-47.

 íd. Véase, también, págs. 69 y 81.

 íd., pág. 48.

 íd., pág. 49.

 íd., págs. 50, 54 y 87.

 íd.

 íd., pág. 50.

 íd.

 íd., págs. 50-51.

 íd., pág. 85.

 íd., págs. 86-88.

 íd., págs. 94-95.

 íd., pág. 100.

 íd., pág. 125.

 íd., págs. 168 y 201.

 Véase Sentencia, Apéndice de la Petición de certiorari, pág. 273.

 En su apelación criminal, el Sr. Alberto De Jesús Mercado señaló los siguientes errores:
“Erró el Honorable Tribunal de Primera Instancia en su apreciación de la prueba al declarar culpable a Alberto De Jesús Mercado sin que la prueba de [cargo] superara la duda razonable, soslayando las fatales contradicciones, falsedades y lagunas en la prueba de [cargo] sobre aspectos esenciales de las acusaciones y desatendiendo la prueba de defensa.
“Erró el Honorable Tribunal de Primera Instancia al declarar culpable a Alberto de Jesús Mercado al resolver que la frase me cago en tu madre alegadamente proferida a un policía que atendía eventos de desobediencia civil de los estudiantes de la Universidad de Puerto Rico, en un ambiente de tensión caracterizado por tiros de escopeta con balas de goma, gases lacrimógenos, gas pimienta y corrida a los estudiantes para expulsarlos del área de San Juan, constituyó una alteración a la paz del policía, que afectó su derecho a la intimidad”. Apéndice de la Petición de certiorari, págs. 251 y 255.

 El recurso ante nuestra consideración se limita a revisar la determinación del Tribunal de Apelaciones en cuanto a la revocación del delito de agresión. Por lo tanto, no haremos referencia al delito de alteración a la paz. Véase Petición de certiorari, pág. 1 esc. 1.

 Véase nuestra Resolución de 24 de julio de 2012.

 Citando a don Alfonso de Paula Pérez, La prueba de testigos en el proceso civil español, Madrid, Ed. Reus, 1968, pág. 7.

 Diccionario de la lengua española, 22da ed., 2001, disponible en: http://rae. es/rae.html (última visita, 4 de febrero de 2013).

 íd.

 Véase Opinión disidente del Juez Asociado Señor Estrella Martínez, pág. 491.

 Apéndice de la Petición de certiorari, pág. 11.

 Pueblo v. Pruna, 17 DPR 1053 (1911).